## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 1999-SA-01409-SCT

*CYNTHIA DIANN WALTERS*

*v.*

*MISSISSIPPI DEPARTMENT OF ECONOMIC AND COMMUNITY DEVELOPMENT*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/02/1999 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GEORGE S. SHADDOCK |
| ATTORNEY FOR APPELLEE: | CATHERINE LAVERINE FARRIS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 8/24/2000 |
| MOTION FOR REHEARING FILED: | 9/5/2000; denied 10/26/2000 |
| MANDATE ISSUED: | 11/2/2000 |

**BEFORE BANKS, P.J., WALLER AND DIAZ, JJ.**

**BANKS, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This case is before the Court on appeal from a decision of the Hinds County Circuit Court, reversing the decision of the Mississippi Employee Appeals Board to reinstate an employee. Because the Appeals Board decision was arbitrary and capricious, we affirm the judgment of the circuit court.

### I.

¶2. Cynthia Diann Walters ("Walters") was a state service employee hired on January 1, 1992, as an Administrative Assistant III, for the Hattiesburg field office of the Mississippi Department of Economic and Community Development ("Department"). The Hattiesburg Office of the Department is located in the offices of Mississippi Power Company ("Mississippi Power") in downtown Hattiesburg. This arrangement existed since 1991 under a yearly lease between the Department and Mississippi Power. Along with the lease, there was an agreement that the Department would provide administrative support to Mississippi Power in its development efforts. Gerald Frazier ("Frazier") was the Hattiesburg manager of development for Mississippi Power. The Administrative Assistant III performs receptionist tasks, clerical duties, maintenance of office supplies, files monthly department reports, and is the general overall support person for the office.

¶3. The Department was mandated by the State Legislature in 1985 to participate in the State Personnel Board's Employee Performance Appraisal System (EPAS). Additionally, the State Personnel Board was required by the State Legislature to develop the Performance Appraisal Review (PAR) for all employees coming under its jurisdiction. Walters was operating under the required PARS standards during her employment with the Department.

¶4. On June 12, 1997, Walters received a performance summary rating of 1.6 under the PAR standard. Under the State Board's policy, any employee rating below a 2.0 is not performing adequately.

¶5. The corrective action required when an employee's performance falls below a 2.0 rating is the placement of that employee on a Performance Improvement Plan ("PIP"). On June 12, 1997,Walters was placed in a 90-day PIP.

¶6. Walters was advised that her job performance during this time period would have a direct effect upon her continued employment with the Department. On September 22, 1997, at the end of Walters's 90 day PIP, Angela Cagnevith, local manager of the Department's Hattiesburg office, evaluated Walters's work and determined that her job performance had deteriorated to a job rating of 1.3. Walters was suspended. Subsequently Walters was terminated on November 25, 1997.

¶7. On November 17, 1997, Walters filed an appeal of her termination with Mississippi Employees Appeal Board (the "Board"). After a hearing before a Hearing Officer for the Board, Walters was reinstated with her back pay and costs. The Department appealed this decision to the Board and, on July 8, 1998, the Board affirmed the decision of the Hearing Officer. The Department then appealed the Board's decision to the Circuit Court for the First Judicial District of Hinds County which reversed the decision of the Board and reinstated the termination. Walters timely filed her appeal to this Court.

## II.

¶8. The standard of review governing an appeal from a decision of an administrative agency is that of substantial evidence. *Holloway v. Prassell Enters., Inc.*, 348 So.2d 771, 773 (Miss. 1977). The general rule regarding the scope of review that will be exercised by the Supreme Court and the circuit court of an order from an administrative agency's proceeding is limited to the findings of the agency. *Mississippi Employment Sec. Comm'n v. Pulphus*, 538 So.2d 770, 772 (Miss. 1989). However, the appellate court can look beyond the administrative agency's findings. *Johnson v. Ferguson*, 435 So.2d 1191, 1194-95 (Miss. 1983). "[T]he rule is sufficiently flexible to allow the [appellate court] to examine the record as a whole and where such record reveals that the order of the [agency] is based on a mere scintilla of evidence, and is against the overwhelming weight of the credible evidence the court will not hesitate to reverse."*Id*.

## III.

¶9. Walters argues that the circuit court abused its discretion by substituting its judgment for that of the agency. Walters cites to *Mississippi Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors*, 621 So.2d 1211 (Miss. 1993). Walters asserts that the circuit judge chose to go outside the record and completely ignored the factual findings made by the trier of fact, the Mississippi Employee Appeals Board.

¶10. The Department argues that the record shows that there is uncontradicted evidence that Walters did in fact fail to perform her job satisfactorily. The Department notes that the record contains numerous examples of Walters's nonperformance of her job duties. The Department asserts that there is no conflicting evidence in the record contesting the fact that Walters did not properly perform her job during her Performance Improvement Plan (PIP).

¶11. The record before us reflects several instances where Walters's conduct was less than satisfactory.

These include her being rude on the phone, taking poor messages, and several typing errors found in documents for which she was responsible. The thrust of Walters's complaint, as well as the hearing officer's order, was that Walters was terminated as a result of a long feud between her and an employee of Mississippi Power. Nevertheless, neither the record nor the Hearing Officer's Order reflects how their feud justified Walters's poor job performance.

¶12. Moreover, after being informed of her deficiencies, via the PIP, Walters performance continued to decline. Walters's shortcomings may not be excused by her five year old cantankerous relationship with Frazier. The hearing officer and the appeals board did in fact find that the Walters/Frazier relationship was a factor in Walters's shortcomings. Their conclusion regarding the legal effect of this finding is, however, erroneous. Walters' aversion to Frazier does not excuse her job performance. The circuit court did not err in reversing the decision of the appeals board decision affirming the hearing officer's decision that Walters be reinstated.

**IV.**

¶13. Walters argues that the circuit court's judgment is against the overwhelming weight of the evidence. Walters further argues that the judgment is based upon extraneous factors outside the record. A review of Cagnevith's testimony reveals the specifics of Walters's alleged poor performance including: rudeness and poor telephone manners, lateness of reports, not completing tasks, improper phone messages, recording Princess Diana's funeral, typing errors, and locking up the postage meter at night. Walters argues that the typing errors exhibited were not final documents. Also, Walters argues that some of the incorrect phone numbers noted were not her work. She further asserts that some of the phone problems were due to the sheer volume of phone messages and the responses required.

¶14. Furthermore, Walters asserts that the basis for her termination was the discord between Walters and Frazier. Walters testified that in 1993, Walters had been informed by the then local manager, William Stevens, that she did not work for Frazier or Mississippi Power. However, in 1997, Cagnevith stated that this was a part of Walters's position. Walters characterizes this as an intolerable condition. Walters argues that the soothing of the feelings, or ego, of a "related" private employee, regardless of his ties with the State of Mississippi, does not justify the termination of a state employee under pretextual, self-serving grounds.

¶15. Walters's PIP also required corrective action for "Special Projects." The Department argues that under this job requirement, Walters was to provide necessary clerical support for joint projects. Walters, according to the Department, was to provide the necessary clerical support for joint projects undertaken by the Department, the Mississippi Power Company and other local economic development groups. The Mississippi Power Company is one of the several Economic Development Allies of the State of Mississippi working in association with the Hattiesburg field office.

¶16. The Department maintains that Walters was never required to do any work for Mississippi Power Company. Instead, all work performed by Walters was for joint economic development projects between the State and Mississippi Power.

¶17. The Department argues that the only work related contact Walters ever had with Frazier was when she was required to type a community strategic plan after it was drafted by Cagnevith and Frazier. All work was done by Walters and overseen by Cagnevith. The Department stresses that the failure to make staff hotel reservations, the sending out of incorrect letters and documents, the failure to order office supplies, the

failure to answer the telephone properly, and, the failure to timely send in weekly and monthly reports to Jackson, had nothing to do with the Mississippi Power Company. Accordingly, the Department argues that the hearing officer's excusing all of this nonperformance because Walters did not like Frazier was totally arbitrary and capricious.

¶18. Walters does not debate the fact that she was reluctant to work on any project in which Frazier was involved, despite the fact that the assignments came from her duly authorized supervisors. Her dislike for Frazier stemmed from his previous criticism of her job performance which she thought was unfair to her. Whatever her personal feelings concerning the manner in which that performance appraisal was handled, she was not excused from performing the tasks assigned to her in a diligent and professional manner, whether or not Frazier was involved in the project.

¶19. Under the State Personnel Board policy and procedures, "[f]ailure by the employee to improve job performance shall constitute cause for dismissal, demotion or transfer." Walters was advised by Cagnevith at the time she was placed on the PIP, June 20, 1997, of the seriousness of the situation.

¶20. Walters asserts correctly that this Court should uphold the agency's decision if there is substantial evidence to support its decision. An agency's conclusions must remain undisturbed unless the agency's order 1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates one's constitutional rights." *Mississippi Dep't of Envtl. Quality v. Weems*, 653 So.2d 266, 273 (Miss. 1995) (citing *State Tax Comm'n v. Earnest*, 627 So.2d 313, 319 (Miss.1993). *See also* Miss. Code Ann. § 25-9-132 (1999). Miss. Code Ann. § 25-9-132 (1999) provides that the scope of review of the circuit court is limited. The statute and administrative regulations clearly place the burden of persuasion on the aggrieved employee to demonstrate that the reasons given for dismissal are not true. Miss. Code Ann. § 25-9-127 (1999); Rule 17, Administrative Rules of the Mississippi Employee Appeals Board. Unless the employee carries the burden of persuasion to show that the alleged conduct did not occur, the employee has no right to have the employment decision overturned. *Mississippi Employment Sec. Comm'n v. Collins*, 629 So.2d 576, 580 (Miss. 1993).

¶21. The Board's decision is arbitrary and capricious. While acknowledging the several instances of Walters's poor job performance, the Appeals Board reversed the Department's decision to terminate Walters. As noted by the circuit court, this is inconsistent. The EAB's concern that her relationship with Frazier was at the heart of Walters's problems is of little moment. It was incumbent upon Walters not to allow that relationship to interfere with her job performance. The overwhelming weight of credible evidence reflects that she failed in this regard. Accordingly, the circuit court did not err in reversing the Appeals Board.

## V.

¶22. Walters's final contention is that she was terminated in violation of her First Amendment right of freedom of speech and freedom to petition her government. Specifically, Walters notes that in a television interview in the spring of 1997, she expressed her opposition as a private citizen and property owner to the City of Laurel's proposed annexation of certain areas of Jones County. Specifically, Walters objected to the annexation of an area that included her property. Walters contends that subsequent to the "interview" all of the actors came out of the closet.

¶23. Walters argues that her termination was a product, at least in part, of the television interview. The

record, however, does not reflect the exact date of the interview. What is stated is that it occurred in the spring of 1997. This incident is not mentioned at the time of the initiation of the PIP on June 20 which occurred a day or two prior to the ending of official "spring." The television interview is not mentioned in notes concerning her August 4th review. It is mentioned in the August 25th review, suggesting that any communication from the Department's director occurred in August, well after the performance appraisal and during the PIP. However, the record does not reflect that Walters was reprimanded. The record does reflect that on August 25, 1997, Cagnevith informed Walters that the Department could reprimand her for her television interview. It is not clear whether this was a verbal reprimand for Walters. The record does not contain a written reprimand for Walters's televised interview.

¶24. The Department contends that the true issue is whether Walters failed to perform her job duties. The Department argues that the evidence is clear that Walters simply refused to do her job and is now refusing to take responsibility for her action.

¶25. The record does not reflect that Walters's termination was the result of her televised interview in protest of a proposed annexation by the City of Laurel. Absent Walters's assertions there is little there. Moreover, while Walters's First Amendment rights are alluded to in the hearing officer's findings he did not base his conclusion on a violation of those rights and made no finding that her discharge was attributable to her television appearance.

¶26. Unless the employee carries the burden of persuasion to show that the alleged conduct did not occur, or that the action was impermissibly based on a forbidden factor such as the exercise of First Amendment freedoms, the employee has no right to have the employment decision overturned. *Collins*, 629 So.2d at 580.

¶27. Walters's assignment of error on this point is meritless.

## IV.

¶28. Because the record is replete with evidence that Cynthia Diann Walters did not perform her job duties or improve her performance during her PIP, we affirm the judgment of the circuit court.

¶29. **AFFIRMED**.

> **PRATHER, C.J., PITTMAN, P.J., SMITH, WALLER, COBB AND DIAZ, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION. MILLS, J., NOT PARTICIPATING.**

> **McRAE, JUSTICE, DISSENTING:**

¶30. For over four straight years, Cynthia Diann Walters ("Walters") never received a poor performance rating in her work as administrative assistant at the Mississippi Department of Economic and Community Development ("MDECD"). However, after a longtime feud with an employee of Mississippi Power Company ("MPC"), which shared building space with MDECD, Walters was suddenly given back-to-back poor performance ratings and fired. A hearing officer reinstated Walters and the full employee appeals board affirmed his decision, but was later reversed by the circuit court. The finding of the hearing officer and the appeals board should be affirmed, thus reversing the circuit court's decision and reinstating Walters with back pay and benefits. Accordingly, I dissent.

¶31. While the majority states that it "was incumbent upon Walters not to allow that relationship to interfere with her job performance," there is evidence that several higher ranking employees knew of the conflict and took no steps to resolve it. In fact, the hearing officer found that MDECD "knowingly used this conflict as grounds to terminate this employee. . .the agency chose to terminate a state service employee to soothe the feeling or ego of an employee of the Mississippi Power Company." The majority is correct in stating that there were actions worthy of being described as "arbitrary and capricious." However, those were the actions of MDECD and the circuit court.

¶32. The Hattiesburg office of the MDECD shares a building with the Mississippi Power Company ("MPC"). There was an agreement between the MPC and the MDECD to provide certain equipment for joint use as well as answering of the telephone and typing services. Almost immediately there developed a personality conflict between Walters and Gerald Frazier ("Frazier"), an employee of MPC. The harsh feelings between the two were known in the Hattiesburg office as well as in the Jackson office. Walters had indicated on more than one occasion that she refused to work for or with Frazier. No steps were taken by either MPC or MDECD to resolve this dispute or the heated working environment.[1]

¶33. After four years of work and a spotless record, Walters was twice given reviews lower than satisfactory and was fired from her position. A hearing officer was appointed to review the decision, and on March 30, 1998, the officer, Falton Mason ("Mason"), found that low job performance, if any, on the part of Walters was justified due to a growing personality conflict between Walters and Frazier. The hearing officer ordered that Walters be reinstated to her position, with all back pay and benefits from November 25, 1997. This was later affirmed en banc by the full Employee Appeals Board. The hearing officer concluded as follows with reference to the termination of Walters:

> There is no question that this conflict did in fact affect her work performance, and did result in the low performance appraisal review rating that she received. **It is also apparent that management, knowingly used this conflict to terminate this employee, and did nothing to attempt to resolve it. Rather the agency chose to terminate a state service employee to soothe the feeling or ego of an employee of the Mississippi Power Company.**

¶34. Apparently Walters's poor performance covered several areas: rudeness and poor telephone manners, lateness in completing reports, completing tasks, reporting phone messages, typing errors and locking up the postage meter at night. In Walters's defense, she testified that postage had been found missing from the meter between office closing and opening up the next morning so she locked the meter after office hours, that the typing errors exhibited were actually drafts and not final documents, that a number of the incorrect phone messages were the work of others, that many of the phone problems were due to the sheer volume of phone messages, and the fact that many were transcribed from answering machines in which the messages were less than clear. Walters and MDECD witnesses agreed that the volume of work in the office had greatly increased. The evidence presented against Walters was far from sufficient to warrant termination.

¶35. It is also significant that Walters's job description continued to change, sometimes without notice to Walters. In 1993, Walters was informed by then local manager, William Stevens, that she did not work for Mississippi Power or Frazier. Four years later Walters was told just the opposite by the new local manager, Angela Cognevith.

¶36. When a court reviews the findings of an agency in this state, it must find one of four grounds before overturning the agency's determination. Those grounds are whether the finding was (1) unsupported by substantial evidence, (2) arbitrary or capricious, (3) beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party. *Southeast Miss. Legal Servs. Corp. v. Mississippi Power Co.*, 605 So.2d 796, 798 (Miss. 1992). In this particular case, the hearing officer and appeals board came to the conclusion that was supported by substantial evidence, was not arbitrary or capricious, was within their power to make and violated no statutory or constitutional rights of MDECD. Those findings should be upheld.

¶37. The majority misconstrues the burden of proof pertinent to this case when reading Rule 17 of the Mississippi Employee Appeals Board and *Mississippi Employment Sec. Comm'n v. Collins*, 629 So.2d 576, 580 (Miss. 1993). *Collins* discussed the burden of proof for an aggrieved employee appealing to the Employee Appeals Board, not the burden of proof which must be presented to a circuit court in order to overturn that appeals board decision.[(2)] There is obviously a significant difference in the two situations.

¶38. A number of cases in Mississippi have established a rebuttable presumption in favor of an administrative agency's actions, and the burden of proof rests upon the challenging party. *Mississippi Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors*, 621 So.2d 1211, 1216 (Miss. 1993); *United Cement Co. v. Safe Air for the Env't Inc.*, 558 So.2d 840, 842 (Miss. 1990). MDECD failed to meet that burden.

¶39. As an appellate court, such as the circuit court was in this instance, a judgment may not be substituted for that of the properly designated administrative board or commission. *United Cement*, 558 So.2d at 842. This is particularly true when the board or commission, as the trier of fact, acts within its discretion. *Southeast Miss. Legal Servs. Corp.*, 605 So.2d at 798. The record in this case shows conflicting yet substantial evidence on both sides of this question. In cases such as this, the circuit court is limited to findings of the responsible agency. *Mississippi Employment Sec. Comm'n v. PDN, Inc.*, 586 So.2d 838, 840 (Miss. 1991).

¶40. The standard of review of administrative board decisions by the appellate court is that of substantial evidence. *Holloway v. Prassell Enters., Inc.* 348 So.2d 771, 773 (Miss. 1977). Acting as the initial appellate court in this matter, there was a departure from this standard when the circuit judge chose to go outside the record and the judgment, completely ignoring the factual findings made by the hearing officer and the full Mississippi Employee Appeals Board. The circuit judge in this matter found justification for his reversal in *Johnson v. Ferguson*, 435 So.2d 1191 (Miss. 1983), allowing him to look beyond the agency's findings. Though having some validity, this justification is not controlling. The appellate court may not reweigh facts or substitute its judgment for that of the agency who acted as the trier of fact. The decision of the circuit court should be reversed, and Walters reinstated with back pay and benefits.

¶41. Accordingly, I dissent.

1. It appears that Frazier and Walters's dispute had become so intense that he attempted to have her fired. In 1992, Frazier sent a written complaint to Jimmy Heidel, the agency director, which stated in part: "As part of our prior agreement, the State provides me with administrative support, however this support is inadequate. You will recall, we touched on this in Canada. Attached is my appraisal of the Administrative Assistant's work behavior."

2. "Rule 17 of the EAB Administrative Rules sets forth the order and burden of proof to be followed **in appeals to the EAB** . . . ."*Collins*, 629 So.2d at 580 (emphasis added).