# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CC-00663-SCT

*GARY W. PANNELL*

*v.*

*TOMBIGBEE RIVER VALLEY WATER
MANAGEMENT DISTRICT*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/26/2003 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JIM WAIDE |
| ATTORNEY FOR APPELLEE: | HENRY J. APPLEWHITE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 06/16/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH
## NO. 2004-CC-01368-SCT

*TOMBIGBEE   RIVER   VALLEY   WATER
MANAGEMENT DISTRICT*

*v.*

*MISSISSIPPI   EMPLOYMENT   SECURITY
COMMISSION AND GARY W. PANNELL*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/25/2004 |
| TRIAL JUDGE: | HON. PAUL S. FUNDERBURK |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | HENRY J. APPLEWHITE |
| ATTORNEYS FOR APPELLEES: | ALBERT BOZEMAN WHITE |
| | JIM WAIDE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED - 06/16/2005 |
| MOTION FOR REHEARING FILED: | |

MANDATE ISSUED:

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.    The Tombigbee River Valley Water Management District ("District") terminated Gary W. Pannell's employment following an investigation by District Director Jimmie Mills. Pannell appealed to the Employee Appeals Board (EAB) where the hearing officer found that there was no just cause for the District to terminate Pannell. The District appealed to the full EAB which affirmed the finding of the hearing officer and affirmed Pannell's reinstatement. The District then filed a petition for writ of certiorari requesting that the circuit court review the decision of the EAB. The Lee County Circuit Court granted the petition and reversed the EAB decision, finding it arbitrary and capricious, against the overwhelming weight of the evidence, and erroneous as a matter of law. Pannell timely filed his appeal to this Court.

¶2.    After Pannell was terminated by the District, he filed for unemployment compensation benefits with the Mississippi Employment Security Commission ("Commission"). The Commission awarded Pannell unemployment compensation benefits finding that the District failed to prove that Pannell's actions rose to the level of misconduct. The District appealed, and the Board of Review affirmed the Referee's decision granting benefits. The District then appealed to the Lee County Circuit Court which also affirmed the findings and judgment of the Commission. The District timely appealed to this Court, and the two cases have been consolidated.

## FACTS

¶3.     Gary W. Pannell was an employee of the District for approximately four and one-half years. He worked as a top-heavy equipment operator until his termination on March 31, 2002. In January 2000, Pannell filed several grievances against his supervisors at the District. Pannell alleged that Tommy Jaggers, Facilities Maintenance Superintendent, had allowed an acetylene bomb to discharge within the walls of a government facility. Pannell also accused his immediate supervisor, Harold West, of unsafe work. Finally in September 2001, Pannell filed a grievance against Maintenance Director Mike Phillips, alleging that Phillips had climbed on a crane while in use and had cursed and berated Pannell.

¶4.     Following an investigation into Pannell's grievances, District Director Mills discovered several violations by Pannell. On behalf of the District, Mills issued two written reprimands on February 13, 2002, and one pre-termination notice to Pannell on March 13, 2002. The first reprimand alleged Pannell took "pictures of co-workers and/or of work performed or of work being performed by the Tombigbee River Valley Water Management District during normal work hours. . . ." The incidents were alleged to have occurred in April, August and September 2001. The second reprimand alleged that Pannell refused "to idle the dragline/crane after being told to do so during normal work hours while [] employed. . . ." The incidents were also alleged to have occurred in April, August and September 2001.

¶5.     Pursuant to the pre-termination notice, a hearing was conducted on March 19, 2002. After the hearing, the District notified Pannell that his employment would be terminated effective March 31, 2002. The District determined that Pannell's "operation of the dragline/crane [was] a danger to the safety and lives of co-workers. . . ."  The District also

3

found that Pannell's conduct constituted a "pattern of dangerous operation." The specific

findings of the District were as follows:

> 1. Improperly starting and running the dragline/crane too fast and/or of raising the hammer much higher than necessary in driving piling on projects such as the Hale's Quarters Bridge Project in Monroe County on April 26, 2001, the County Road 560 Bridge Project in Alcorn County in late August and early September 2001, and/or at other times;
> 2. Dropping leads and/or dropping pilings on projects such as the Mantachie Creek Bridge #041 Project in Itawamba County on April 28, 2000, on the Lyle Leggett Bridge Project in Kemper County on May 8, 2000, at the Sam Cole Bridge Project in Kemper County on May 10, 2000, on the County Road 560 Bridge Project in Alcorn County on August 29, 2001 and/or at other times; and/or
> 3. Sleeping or otherwise not paying attention while in the driver's seat of the dragline/crane and having to be waked up on projects such as the Hale's Quarters Bridge Project in Monroe County on April 27, 2001 and/or at other times.

¶6.     Pannell filed an appeal of the District's issuance of the reprimands and an appeal of the

District's decision to terminate his employment. Both appeals were consolidated and were

heard by EAB Hearing Officer Falton O. Mason, Jr., on June 28, 2002. On July 10, 2002, Judge

Mason issued an order overruling and denying the reprimands issued by the District and

reinstating Pannell as an employee of the District.

¶7.     After hearing testimony from several witnesses, Judge Mason determined that:

> The testimony and facts clearly reflect that during the four and one-half years that the Appealing Party has been operating the dragline/crane, there has been no injury to any person, nor has there been any reports filed stating that he has endangered anyone in any way. During his employment, he has never received a performance appraisal; and his immediate supervisor testified that he was not aware that he was supposed to have one, a clear violation by the Responding Party of one of the rules of the State Personnel Board.
> The testimony also reflects that the charges against the Appealing Party were brought only after he filed a grievance against his immediate supervisor, for using profanity at him. The testimony from Jimmie Mills, the Director, was that when he began investigating the grievance, other employees just opened up to him. It is significant that with respect to the investigation of the use of

4

profanity, the response was that he found the complaints to be without merit, yet almost immediately a number of charges were brought against the Appealing Party.

The Hearing Officer having heard the testimony of the employees stating that in their opinion the Appealing Party was an unsafe dragline/crane operator; however, there was [sic] no reports of the incidents they testified to, nor did they indicate they made a complaint that they felt their lives were in any danger. On the occasions wherein they state the lead or piling were dropped, they did not state or complain to anyone that they felt they were in danger.

Therefore, Judge Mason found that Pannell had met his burden of proof and should be reinstated to his previous position with all benefits and back pay. The District appealed to the full EAB which issued an Order on October 31, 2002, affirming the Hearing Officer's decision to reinstate Pannell.

¶8.     On November 18, 2002, the District filed a petition for writ of certiorari with the Circuit Court of Lee County. The petition was granted by Circuit Judge Thomas J. Gardner, III. After accepting briefs from both parties, the circuit court issued its Opinion and Final Order reversing the EAB on the grounds that the EAB's decision to reinstate Pannell was arbitrary and capricious and was not supported by substantial evidence.

¶9.     After his termination, Pannell filed for unemployment benefits. A Claims Examiner initially investigated Pannell's application by interviewing Mills and Pannell. The District also submitted a response to a questionnaire. Based upon the interviews and the District's response, the Claims Examiner awarded Pannell benefits finding that the District failed to prove misconduct. The District appealed the Claims Examiner's finding to the Mississippi Employment Security Commission Board of Review, and a hearing was held before Appeals Referee Danny C. Timmons. After considering the testimony and exhibits presented, Timmons found that the District terminated Pannell for poor work performance and unsafe work habits.

5

However, Timmons found that Pannell had received no formal warnings or reprimands regarding his quality of work or safety prior to a grievance filed by Pannell September 2001. Timmons further found that although Pannell admitted his work was dangerous, Pannell also testified that he was never made aware that "his actions were being considered by his employer to be acts of gross negligence or in violation of any set of safety policies." Timmons concluded that he did not find that "the claimant was terminated for any specific incident nor did the claimant receive any type of disciplinary actions from his employer as outlined in the company's policies and procedures prior to the date of termination of employment." Therefore, Timmons found that Pannell's actions did not rise to the level of misconduct as required to deny the award of benefits.

¶10.    The District appealed the findings of the referee. The Board of Review, after fully reviewing the findings of the referee, affirmed the award of benefits to Pannell. On August 7, 2003, the District appealed the award to the Lee County Circuit Court where Circuit Judge Paul S. Funderburk affirmed the award of benefits. The District timely appealed to this Court.

**ANALYSIS**

¶11.    The standard of review governing an appeal from a decision of an administrative agency is that of substantial evidence. *Walters v. Miss. Dep't of Econ. & Cmty. Dev.*, 768 So.2d 893, 895 (Miss. 2000) (citing *Holloway v. Prassell Enters., Inc.*, 348 So.2d 771, 773 (Miss. 1977)). Pursuant to Miss. Code Ann. § 25-9-132 (Rev. 2003), the statutory scope of judicial review of an employee appeals board decision is:

> (2) The scope of review of the circuit court in such cases shall be limited to
> review of the record made before the employee appeals board or hearing officer

6

to determine if the action of the employee appeals board is unlawful for the reason that it was:

> (a) Not supported by substantial evidence;
>
> (b) Arbitrary or capricious; or
>
> (c) In violation of some statutory or constitutional right of the employee.

These factors which govern the standard of review for agency decisions are the only grounds for overturning an agency's action; otherwise the agency's determination must remain undisturbed. *Walters*, 768 So.2d at 897; *Miss. Dep't of Envtl. Quality v. Weems*, 653 So.2d 266, 273 (Miss. 1995). This Court must often determine whether a circuit court has exceeded its authority in overturning an agency action, and we proceed aware that "a rebuttable presumption exists in favor of the action of the agency, and the burden of proof is on the party challenging an agency's action." *Publ. Employees' Ret. Sys. v. Shurden*, 822 So.2d 258, 263 (Miss. 2002); *Pub. Employees' Ret. Sys. v. Dishmon*, 797 So.2d 888, 893 (Miss. 2001). Where that authority has been exceeded, this Court will not hesitate to reverse and reinstate the agency's order. *Miss. Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors*, 621 So.2d 1211, 1215 (Miss. 1993).

*Miss. Transp. Comm'n v. Anson*, 879 So. 2d 958, 963 (Miss. 2004). If an administrative agency's decision is not based on substantial evidence, this Court will find the decision to be arbitrary and capricious. *Pub. Employees' Ret. Sys. v. Marquez*, 774 So.2d 421, 425 (Miss. 2000).

¶12.    Miss. Code Ann. § 71-5-513(A)(1)(b) (Rev. 2000) provides that an individual may be disqualified for unemployment benefits if he was discharged "for misconduct connected with his work." However, the employer has the "burden of showing by 'substantial, clear, and convincing evidence' that the former employee's conduct warrants disqualification from eligibility for benefits." *City of Clarksdale v. Miss. Employment Sec. Comm'n*, 699 So.2d 578, 580 (Miss. 1997) (quoting *Foster v. Miss. Employment Sec. Comm'n*, 632 So.2d 926, 927 (Miss. 1994)).

**I. Termination**

**A. Substantial Evidence**

¶13. Regarding the Group III allegations of "Acts of Conduct", the District alleged three separate offenses: (1) improperly starting and running the dragline too fast and raising the hammer too high, (2) dropping leads or pilings, and (3) sleeping or otherwise not paying attention while in the operator's seat of the dragline.

¶14. As to the allegations of improperly starting and running the dragline too fast and raising the hammer to high, the circuit court found that:

> Harold West, Tommy Jaggers, Mike Phillips and Dale Franks all testified that Pannell began the pile driving with the dragline operating too fast and that the hammer was too high thus creating a dangerous situation. There was testimony of specific instances of dangerous operation on particular jobs being ones in Kemper County in May 2000, T. 200-04, in Monroe County in April 2001, T. 159-61, 254-57, in Alcorn County in August or September 2001, T. 258, 296, and on other occasions, T. 209-10. Pannell's only evidence on this point was that the dragline could not be operated at a slower speed and to do so would not be safe, T. 350-51, and Pannell did not testify as to any particular job.

¶15. The District witnesses also testified to several instances of Pannell's dropping pilings or leads. Pannell's only rebuttal concerned the Alcorn County job where he testified that it had been raining. The District also introduced a video tape, which included sound effects, along with photographs of the dragline being operated by Harold West. These exhibits illustrated how pilings were started and what could happen if the pilings were deep enough to raise the hammer and speed up the engine. West also testified that the conditions of the ground where men were guiding the piling or giving hand signals were often muddy and wet, near slopes or banks, with the lead, piling and hammer suspended on cables. If something were to happen with the lead,

8

the men would be unable to act quickly in order to move out of the way of a falling lead or piling.

¶16.     Tommy Jaggers testified that Pannell went to sleep while the dragline was holding bridge components and while men were working underneath the bridge in Kemper County. Jaggers further testified that upon being awakened, Pannell was disoriented and dangerously jerked the cables. Dale Franks testified that Pannell also fell asleep while working on the Monroe County job. When Pannell was asked to put slack in the cables, Franks testified that he appeared dazed. Pannell admitted to sleeping while on the job in the operator's seat of the dragline. Pannell testified it was common practice for employees to sleep on the job if they were not performing a specific task at the time. Pannell also stated that he would not have a sharp eye for dangerous situations if he were asleep while in the operator's seat of the dragline.

¶17.     Jim Rutherford, who testified on behalf of Pannell, stated that Pannell was a safe dragline operator. However, Rutherford could not testify to the specific instances alleged by the District because he quit working for the District in April 1999.

¶18.     The District also alleged two acts of insubordination: (1) the unauthorized taking of pictures and (2) the refusal to listen to his supervisors regarding the proper use of the dragline. Pannell testified that he took the pictures for safety reasons; however, he admitted that the pictures were not authorized by the District. Dale Franks testified that Pannell got off of the dragline while it was running in order to take the pictures. Franks testified that this action by Pannell caused unexpected delays in the project and was unnecessarily dangerous. Harold West testified that during the Monroe County job, he informed Pannell three separate times to properly idle the dragline, but Pannell refused to do so. Mike Phillips testified that when he

9

arrived at the same project, Pannell was still running the dragline too fast. Pannell idled the dragline down, but Phillips testified that he soon began running the dragline too fast again. Franks and Jaggers also offered testimony that Pannell ran the dragline too fast on other jobs.

¶19. After fully reviewing all of the evidence presented to it, the circuit court found that as to the three separate instances alleging "Acts of Conduct," the evidence was "overwhelmingly in favor of the Tombigbee District that Pannell did commit these offenses." As to the two separate allegations of insubordination, the circuit court found that the "overwhelming weight of the credible evidence supports the actions taken by the Tombigbee District." The circuit court further found that:

> The Hearing Officer and the Full Employee Appeals Board found that is was ". . .a clear violation by the Responding Party of one of the rules fo the State Personnel Board" that Pannell had not been given the required annual performance appraisals by the Tombigbee District. While this court certainly does not condone that failure to comply, this court also finds that this one failure by the Tombigbee District was a large factor causing the Hearing Officer and the Full Employee Appeals Board to reverse the termination of Pannell and to reinstate his employment with the Tombigbee District. In the case of *Young v. Mississippi State Tax Com'n*, 635 So. 2d 869 (Miss. 1994), the Employee Appeals Board similarly expressed concern that the Tax Commission had not given a terminated employee the required performance appraisal. In *Young*, the Supreme Court held that as a matter of law the Employee Appeals Board could not reverse the termination of an employee by the Tax Commission on the ground that the Tax Commission did not have a "performance plan." 635 So. 2d at 873. The terms "may attempt to correct unacceptable behavior" prior to taking formal disciplinary action "whenever practical" were the key provisions concerning the discipline of employees by a state agency. *Id.* 872-73. Those same key provisions are likewise contained in the relevant Mississippi State Employee Handbook, July 2001, Section 10. Under the ruling of *Young*, the Hearing Officer's Order as affirmed by the Full Employee Appeals Board Order are erroneous as a matter of law and should be reversed.

(emphasis in original).

¶20.    We find that the circuit court was eminently correct in its findings in that there was substantial evidence of the actions complained of by the District and that Pannell failed in proving that the District acted arbitrarily and capriciously so as to entitle him to be reinstated. We also find that the EAB based its decision erroneously on the fact that Pannell had not be given a performance evaluation. Therefore, Judge Gardner correctly reversed the orders of the EAB and reinstated the decision by the District to terminate Gary Pannell.

### B. Arbitrary and Capricious

¶21.    We have noted:

> If an agency's decision is supported by substantial evidence, then it is not arbitrary or capricious. *Miss. Bureau of Narcotics v. Stacy*, 817 So.2d 523, 526 (Miss. 2002). This Court has said that the terms "arbitrary" and "capricious" are open-textured and not susceptible to precise definition or mechanical application." *Miss. State Dep't of Health v. Southwest Miss. Reg'l Med. Ctr.*, 580 So.2d 1238, 1240 (Miss. 1991). Moreover, an act is capricious when it is "done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles." *Id.*

*Anson*, 879 So. 2d at 964. Although the EAB had the opportunity to observe the demeanor of the witnesses which testified in the case subjudice, we have previously held that the District's decision to terminate Pannell was based upon substantial evidence. Therefore, we find that the EAB acted arbitrarily and capriciously in reversing the decision of the District and reinstating Pannell to his previous employment.

¶22.    After correctly determining that it was not the trier of fact in the present case, the Lee County Circuit Court found pursuant to Mississippi precedent that it had a duty to review the proceedings before it in the following manner:

11

(a) The record as a whole, including the transcript, exhibits, and all other matters before the Employees Appeal Board including the findings should be reviewed by this court.

(b) As two state agencies are involved, the findings, and actions taken, by the Tombigbee District, the responding or employing agency, are entitled to a presumption of correctness, *Mississippi Department of Corrections v. Harris*, 831 So. 2d 1190, 1192 (Miss. Ct. App. 2002)

(c) In order to meet that burden of proof before the Employee Appeals Board, Pannell must prove that the actions taken by the Tombigbee District were arbitrary, capricious, and against the overwhelming weight of the evidence and that he is entitled to reinstatement, *Harris*, 831 So. 2d at 1193 and E.A.B. Rule 21(B) (July 2001).

(d) Pannell, as the aggrieved employee, had the burden of proof before the Employee Appeals Board that the actions complained of by the Tombigbee District did not occur and that the alleged reasons for dismissal are not true, *Walters v. Mississippi Department of Economic and Community Development*, 768 So. 2d 893, (Miss. 2000); *Harris*, 831 So. 2d at 1193; E.A.B. Rule 21(C) (July 2001); and Miss. Code Ann. § 25-9-127.

(e) If there is substantial evidence of the actions complained of by the Tombigbee District, such as at least one Group III offense or two Group II offenses which permit the agency to terminate Pannell, the Employee Appeals Board can not alter the agency's decision to terminate Pannell as the employing agency ". . . <u>acted in accordance with the published policies, rules and regulations</u>. . ." *Harris*, 831 So. 2d at 1193 and E.A.B. Rule 24(B) (July 2001).

(emphasis in original). Because the circuit court, after fully reviewing the decision of the EAB, correctly determined that the EAB's decision was not supported by substantial evidence and was, therefore, arbitrary and capricious, we affirm the circuit court's reversal of the Order of the EAB and its reinstatement of the District's termination of Gary Pannell's employment.

## II. Unemployment Benefits

¶23.     In *Wheeler v. Arriola*, 408 So. 2d 1381 (Miss. 1982), this Court adopted the following definition of "misconduct":

> conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability,

wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, came within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion were not considered "misconduct" within the meaning of the statute.

*Id.* at 1383. If there does not appear to be any willful or wanton conduct or where the employee has attempted in good faith to perform satisfactorily, this Court has refused to find misconduct.

¶24. Pannell argues that there was substantial evidence for the Referee's finding that Pannell's employment with the District was terminated was due to his filing of a grievance against his superior, not due to his performance as a dragline operator. Pannell testified before the Referee that in the four and one-half years that he had been an employee of the District, he had never been given any formal warnings concerning his performance until after his grievances were filed. Pannell denied that he had done anything wrong in the operation of the crane and explained that the particular crane in question had worn brakes which caused the hammer to be erratic. Pannell also testified that he denied all charges made by the District that he dropped any leads or pilings, and he stated that he had made official reports that the brakes needed to be repaired. Pannell further testified that he did not willfully disregard any directions from his superiors regarding operation of the dragline.

¶25. Tommy Jaggers, a witness for the District, testified that Pannell intentionally operated the dragline in a manner which caused problems for the other workers and the company. Harold West, Pannell's immediate supervisor, testified that Pannell dropped leads and pilings, the result of which could have caused great injury to other employees. West stated that he

corrected Pannell's operation of the crane to the best of his ability. West further testified that he also asked Pannell several times to decrease the speed at which he was operating the machine, but Pannell refused to do so.

¶26.    Mike Phillips, the general supervisor, also testified that Pannell willfully disobeyed orders and ran the crane at an improper speed. After repeatedly being told how to operate the machine, Pannell idled the machine so far down that it would not work, causing Phillips to get into the cab of the crane and physically instruct Pannell on the proper operation. Other witnesses testified to numerous incidences where Pannell operated the crane at an improper speed after being instructed to slow the machine down. There was also testimony that Pannell slept on the job after being instructed not to do so. Pannell admitted to sleeping on the job, but he denied ever being told not to.

¶27.    In *Shannon Engineering & Constr., Inc. v. Mississippi Employment Sec. Comm'n*, 549 So. 2d 446 (Miss. 1989), this Court held that "insubordination" was included within the scope of "misconduct" under Miss. Code Ann. § 71-5-513 warranting a denial of unemployment benefits. In *Shannon*, we defined "insubordination" as a "constant or continuing intentional refusal to obey a direct or implied order, reasonable in nature, and given by and with proper authority." 549 So. 2d at 449 (quoting *Sims v. Bd. of Trustees, Holly Springs Mun. Separate School Dist.*, 414 So.2d 431, 435 (Miss. 1982)). Several incidences of insubordination were presented to the Referee; however, the Referee chose to place greater weight on the fact that these incidences were not officially reported until an investigation was conducted as a result of grievances filed by Pannell.

14

> [T]he referee does not find that the claimant was terminated for any specific incident nor did the claimant receive any type of disciplinary actions from his employer as outlined in the company's policies and procedures prior to the date of termination of employment. The referee does not find that the claimant's actions would rise to the level of misconduct as that term is used in the law and therefore, affirms the decision of the claims examiner.

¶28. Upon a thorough review of the record, we find that the District met its burden of proof by clear and convincing evidence that Pannell's conduct warranted disqualification of unemployment benefits. Several District employees testified that Pannell continued to operate machinery at dangerous speeds after repeatedly refusing to heed warnings by his superiors of his improper use of the machinery. Pannell's only excuse for his conduct was that the machinery was in disrepair.

¶29. As stated previously, this Court has held in ***Young v. Mississippi State Tax Comm'n***, 635 So. 2d 869 (Miss. 1994), that it was improper for the EAB to reverse a termination on the grounds that the employer had failed to take formal disciplinary action. Likewise, we find it improper to award unemployment benefits on the sole grounds that formal disciplinary action was not taken prior to the employee's termination. There is substantial evidence in the record that Pannell was verbally warned several times of his improper conduct regarding his operation of machinery. He was corrected by his immediate supervisor, and he was corrected by his general supervisor. We find that the decision of the Mississippi Employment Security Commission to award unemployment benefits to Gary Pannell was arbitrary and capricious and against the overwhelming weight of the evidence. Therefore, we reverse the circuit court's affirmance of the Commission's award of unemployment benefits to Gary Pannell.

**CONCLUSION**

¶30. The Lee County Circuit Court was correct in finding the Employee Appeals Board's decision to reinstate Gary Pannell's employment with the Tombigbee River Valley Water Management District was arbitrary and capricious and against the overwhelming weight of the evidence. Therefore, we affirm the circuit court's judgment reversing the EAB decision and reinstating the District's termination of Gary Pannell's employment. However, the Lee County Circuit Court improperly affirmed the Mississippi Employment Security Commission's award of unemployment benefits to Gary Pannell. Finding that the Commission's decision was arbitrary and capricious and against the overwhelming weight of the evidence, we reverse the circuit court's judgment and the Commission's judgment, and we render judgment here denying the unemployment compensation benefits claim of Gary W. Pannell.

¶31. **CAUSE NO. 2004-CC-00663-SCT IS AFFIRMED. CAUSE NO. 2004-CC-01368-SCT IS REVERSED AND RENDERED.**

**SMITH, C.J., WALLER, P.J., DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. COBB, P.J., AND DIAZ, J., NOT PARTICIPATING.**

16