BARNES, J.,
for the Court:
¶ 1. The Mississippi Forestry Commission (MFC) terminated Stephen Oglesby, a licensed professional forester in Franklin County, Mississippi, for insubordination. Oglesby appealed to the Mississippi Employee Appeals Board (EAB), where the hearing officer upheld his termination. He appealed to the full EAB, which also affirmed his termination. Oglesby next appealed to the Franklin County Circuit Court, which reversed the EAB’s decision, stating Oglesby’s termination was not supported by substantial evidence. The MFC appealed to this Court. We find the EAB’s decision was supported by substantial evidence; accordingly, we reverse the circuit court’s decision and render judgment, thereby reinstating the EAB’s decision to terminate Oglesby.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. Oglesby was employed as a Forester II by the MFC. He had worked for the MFC in Franklin County for over twenty-five years. His primary responsibility was management of sixteenth section trust lands, which produce revenue for the Franklin County School System.[1] The conflict between Oglesby and the MFC originated with the MFC’s change to a more aggressive timber management plan for sixteenth section lands in order to obtain higher, more sustained timber revenue for the schools. The new approach called for moving from a sixty-year rotation to a thirty-five year rotation, meaning timber stands would be thinned, and older, high risk timber would be harvested. At a meeting in June 2008, MFC’s leadership explained the rationale behind the new management plan and instructed its foresters, including Oglesby, to -write new timber management plans consistent with the new strategy. Franklin County had some very old timber that would require aggressive harvesting and immediate, significant timber sales. On October 1, 2008, Oglesby submitted his timber management plan to Randy Chapin, the MFC’s district forester and Oglesby’s immediate supervisor.
¶ 3. On October 31, 2008, in a letter entitled “Notice of Reprimands and Employer/Employee Conference,” Chapin charged Oglesby with three separate “Group Two Offenses” of insubordination for refusing to follow the agency’s instructions. In the first instance, after the June 2008 meeting, Chapin learned that Oglesby was resisting and opposing the agency’s plan of moving to the thirty-five year rotation. Chapin spoke with Oglesby on the telephone in the third week of September 2008, reminding him that “before he turned in his final version of the plan,” he needed “to include all the old timber in Franklin County.” Chapin testified that *378 when Oglesby turned in his plan, he did not comply with these instructions, leaving approximately 3,000 acres of old timber unharvested for the next ten years. However, Chapin admitted Oglesby’s plan was slightly more aggressive and included the harvesting of some of the old timber. Chapin estimated that Oglesby’s plan would have provided a revenue in the first ten years of approximately $8 million, whereas the agency’s new plan would generate approximately $15 million in revenue. Chapin testified that he evaluated Oglesby’s plan, and it provided for a sixty-year rotation, not thirty-five. The MFC identifies this as the first instance of Oglesby’s insubordination.
¶ 4. According to the MFC, the second instance of insubordination began when Chapin sent an email to Oglesby on October 16, 2008, instructing Oglesby to revise the management plan and comply with the instructions that had been previously given to him because his plan was not acceptable. Chapin specifically noted that Ogles-by’s plan had 3,000 acres of old timber untouched during the next ten years. Oglesby responded via email stating that some of the new plan’s “added cuts are ok, just not all, for one reason or another.” He also stated that the new plan was “not even a thirty-year rotation,” and expressed his concern that “for many years there would be no revenue to [the] school.” Oglesby stated that he would look over the plan more closely that day and get back with Chapin. On October 22, 2008, Chapin testified that Oglesby called and stated he would not comply with the directions in the October 16 email, and to take his name off the plan. The MFC claims this action constituted the second instance of insubordination.
¶ 5. The MFC contends the third instance of insubordination occurred on October 23, 2008, when, at Chapin’s request, Oglesby met with him; the State Forester (MFC’s executive director), Charlie Morgan; and Stuart Sellers. Morgan explained to Oglesby why he wanted to make the change in the MFC’s management plan, moving towards a thirty-five year rotation. Morgan testified that he was met with “pretty strong resistence” by Oglesby, who showed a “total lack of respect for authority or for business”— Oglesby ground his teeth and shook his head as Morgan was speaking with him at the meeting. Morgan also testified that Oglesby had been “actively engaged in communication with the Franklin County School Board in advising [it] that the MFC’s timber management plan should not be approved or accepted.” However, the school superintendent testified that while Oglesby expressed professional concern and reluctance about the new plan, he never told the school board it should refuse to go along with it.
¶ 6. In November 2008, Morgan suspended Oglesby, putting him on administrative leave with pay. In a letter to Chapin dated November 17, 2008, Oglesby responded to the accusations, denying any insubordination. Regarding the first instance, Oglesby claimed that in the summer of 2008, there was just one meeting, not “several,” as Chapin had stated, where Morgan and Tucker discussed a more aggressive approach to timber management, but “no details were provided and no definite plan was outlined.” Oglesby denied that he was ordered to include specific timber sales in that plan and claimed that in response to this meeting, he prepared a plan that provided a “more aggressive” approach.
¶ 7. Regarding the second offense, Oglesby claimed Chapin sent him revisions to his plan. These revisions had never been discussed with Oglesby. Therefore, he called Chapin on October 22 to discuss *379 them. Oglesby asked Chapin to remove his name from the new management plan with the proposed revisions because in Oglesby’s professional opinion the proposal was “not based on sound forestry management practices” and therefore was not in the best interest of the lands or the school district. Oglesby agreed he “would do the work if [the plan was] approved.” He also claimed he did not refuse to comply with the directions of his superiors “except to the extent that those instructions required [him] to violate or attempt ... to violate ... the Code of Ethics and [his] own common sense and knowledge of the properties and timber in question.”
¶ 8. Finally, regarding the third occasion of insubordination, Oglesby claimed that he listened carefully to the rationales of Morgan, Chapin, and Sellers at the October 28 meeting, but Oglesby “was not convinced” on the propriety of the new plan and expressed his professional concerns. However, he claims he never refused to “implement” the MFC’s plan, but he did request that someone else sign off on the plan. At the end of this meeting, the MFC took Oglesby’s work computer, which contained the computer program for the timber plan.
¶ 9. On November 18, 2008, Oglesby responded to the charges in an employer/employee conference before a hearing officer designated by the State Forester. Oglesby was present and represented by counsel. On December 12, 2008, Morgan decided to terminate Oglesby, and Oglesby appealed to the EAB. In March 2009, Oglesby’s case was heard by Hearing Officer Ingrid Dave Williams, and the parties were given the opportunity to examine witnesses and present evidence. Chapin and Morgan testified for the MFC. Testifying on Oglesby’s behalf were Clayton Fleming, Superintendent of the Franklin County Schools; Sidney Boteler, a professional forester; Oglesby’s wife; and Oglesby himself. In August 2009, Hearing Officer Williams issued an order upholding Oglesby’s termination. In January 2010, Oglesby appealed to the full Board, which affirmed his termination. Oglesby then appealed ■ to the Franklin County Circuit Court, which reversed the Board, finding there was not substantial evidence to support the termination, and the matter was more of a disagreement of professional opinions than insubordination. The MFC timely appealed to this Court, arguing that the circuit court ignored substantial evidence in the record, failed to apply the full definition of “insubordination,” improperly reweighed the evidence, and failed to give deference to certain statutory authority. In his brief, Oglesby also raises two additional reasons the circuit court could have reversed the EAB’s decision: the EAB failed to apply the correct burden of proof, and the MFC failed to follow the Mississippi State Employee Handbook.
STANDARD OF REVIEW
¶ 10. The decision of an employee appeals board will be upheld upon judicial review unless it is: “(a) [n]ot supported by substantial evidence; (b) [arbitrary or capricious; or (c) [i]n violation of some statutory or constitutional right of the employee.” Pannell v. Tombigbee River Valley Water Mgmt. Dist., 909 So.2d 1115, 1120 (¶ 11) (Miss.2005) (quoting Miss.Code Ann. § 25-9-182 (Rev. 2010)) (citation omitted). “These factors ... are the only grounds for overturning an agency’s action; otherwise the agency’s determination must remain undisturbed.” Id. (quoting Miss. Transp. Comm’n v. Anson, 879 So.2d 958, 963 (¶ 13) (Miss.2004)).
¶ 11. In our review, this Court does not act as an initial fact-finder. “We determine whether the agency could prop *380 erly have evaluated the contested evidence in a manner that supports the agency decision.” Miss. Dept. of Corr. v. Harris, 831 So.2d 1190, 1192 (¶ 6) (Miss.Ct.App.2002) (citing Miss. Pub. Serv. Comm’n v. Merchants Truck Line, Inc., 598 So.2d 778, 782 (Miss.1992)). The reviewing court “must often determine whether a circuit court has exceeded its authority in overturning an agency action.” Pannell, 909 So.2d at 1120 (¶ 11). We note “a rebuttable presumption exists in favor of the action of the agency, and the burden of proof is on the party challenging an agency’s action.” Id. (quoting Pub. Employees’ Ret. Sys. v. Shurden, 822 So.2d 258, 263 (¶ 13) (Miss.2002)). “Where that authority has been exceeded, [the reviewing court] will not hesitate to reverse and reinstate the agency’s order.” Id. (citing Miss. Comm’n on Envtl. Quality v. Chickasaw County Bd. of Supervisors, 621 So.2d 1211, 1215 (Miss.1993)).
ANALYSIS
I. SUBSTANTIAL EVIDENCE
¶ 12. The MFC argues that the EAB’s ruling, which affirmed the agency’s termination of Oglesby for insubordination, was supported by substantial evidence in the record, and the circuit court erred in overlooking this evidence. We agree.
¶ 13. The circuit court, which had the same standard of review for the EAB’s decision as this Court does now, stated that the “essential question” for the court was whether “there was substantial evidence that Oglesby was actually insubordinate on his job.” However, as the MFC notes, the proper question for the reviewing court is whether there is sufficient evidence to support the EAB’s finding that Oglesby was insubordinate. In its September 2010 order reversing the EAB’s decision, the circuit court ruled that there was not evidence of actual insubordination in the record; instead, the evidence showed Oglesby was willing to abide by the new policy. The only evidence of outright refusal was Oglesby’s refusal to sign off on the plan for “professional ethical reasons”; therefore, the circuit court concluded the termination for insubordination was not supported by substantial evidence.
¶ 14. “Substantial evidence means more than a scintilla or a suspicion.” Miss. State Dep’t of Health v. Natchez Cmty. Hosp., 743 So.2d 973, 977 (¶ 12) (Miss.1999). It is such evidence that “reasonable minds might accept as adequate to support a conclusion.” Delta CMI v. Speck, 586 So.2d 768, 773 (Miss.1991). If an administrative agency’s decision is based on substantial evidence, it is not arbitrary and capricious. Pannell, 909 So.2d at 1122 (¶ 21) (citing Anson, 879 So.2d at 964 (¶ 17)). The definition of “insubordination” the MFC used in its October 2008 notice of reprimands letter, which is found in the State Personnel Board Policy and Procedures Manual,[2] “include[s], but [is] not limited to, resisting management directives through actions and/or verbal exchange, and/or failure or refusal to follow supervisor’s instructions, perform assigned work, or otherwise comply with applicable established written policy.”
¶ 15. The full EAB upheld the hearing officer’s decision, which found “Oglesby did refuse to follow management directives on three separate occasions cited in the ‘Notice of Reprimands’ ” letter of October 31, 2008. These occasions were the basis of the three Group Two offenses. We find *381 each of these instances was supported by substantial evidence from the record.[3]
¶ 16. The first charge of insubordination was Oglesby resisting and failing to submit a timber management plan that included the more aggressive timber rotation in sixteenth section lands, which had been decided upon by MFC’s leadership in the summer of 2008 and presented to the service foresters, including Oglesby, in June 2008. Chapin testified Oglesby’s initial plan did not follow the MFC’s instructions and did not include approximately 3,000 acres of the old timber in Franklin County. Further, it is undisputed that Oglesby’s professional opinion was in opposition to the MFC’s new plan; he thought it was overly aggressive and not in the best interest of the Franklin County School District. In his defense to this charge, Oglesby contends that he received only limited instructions to fashion a “more aggressive” plan that moved toward a thirty-five year instead of a sixty year rotation, and he did just that. Yet substantial evidence shows Oglesby’s initial plan did not go nearly far enough in harvesting timber, and he was aware of the more aggressive direction the agency was going with the new timber management strategy-
¶ 17. The second instance of insubordination was Oglesby fading to revise his plan to include certain timber sales, including the 3,000 acres of older timber, after Chapin had told him in an email dated October 16, 2008, to include these sales. Chapin testified Oglesby called him October 22 and stated that he would not comply with Chapin’s instructions to revise the plan. Also, Chapin stated Oglesby wanted his name off the plan. In response to this charge, Oglesby stated that he expressed “professional concern about specific sales,” but did not refuse to comply with Chapin’s orders regarding revisions. Oglesby also claims he agreed to implement the plan, but refused to sign off on it personally. However, this Court has found refusal to sign a required document constitutes insubordination. In Spears v. Mississippi Department of Wildlife, Fisheries & Parks, 997 So.2d 946, 952-53 (¶¶ 31, 35) (Miss.Ct.App.2008), this Court held that refusal to sign a required document — a performance appraisal review — was considered an act of insubordination. Oglesby also requested his name be removed from the face of the document. In spite of the conflicting evidence on whether Oglesby agreed to follow Chapin’s instructions regarding the plan’s revisions, there is substantial evidence of insubordination. There is evidence that Oglesby not only refused to sign off on the plan, but that he also refused to draft the plan according to his superiors’ instructions.
¶ 18. Finally, the third incident of insubordination occurred during the meeting between State Forester Morgan, Chapin, and Oglesby on October 23, 2008, where Morgan tried to impress upon Oglesby the importance of his compliance with the new management plan to increase timber sales. Morgan testified Oglesby was resistant to the new plan, refused to revise his plan, and refused to sign a revised plan. Further, Morgan testified that Oglesby’s behavior during this meeting showed a lack of respect for authority. Although testimony conflicted, Morgan determined that Oglesby had been “actively engaged in communication” with the Franklin County School Board criticizing the new plan. Nonetheless, School Superintendent Fleming testified that while Oglesby had ex *382 pressed professional concerns about the new strategy, he had not told the school board to disagree with it. Oglesby responded that it would be improper to terminate him for refusing to accept the rationale of his superiors. However, not only did he disagree with the rationale of his superiors, but he did not follow their instructions or perform his required duties.
¶ 19. Further, we are not persuaded by Oglesby’s argument that signing the new plan would violate “his professional code of ethics.” In his brief, Oglesby has not cited any part of this code to support his position, and we find nothing in the registered forester’s code of ethics that states putting one’s name on a document means complete agreement with the document’s rationale.[4] In oral argument, counsel for Oglesby also admitted that there was nothing in this code that stated it would be unethical to sign the plan. Instead, in his written statement of November 17, 2008, in response to the charges against him, Oglesby indicated that he alone knew what was best for the timber of Franklin County. He stated: “In my mind I firmly believe that no one knows these lands as well as I do because of my years of involvement with them.” He explained that he contacted Chapin because “the proposed timber sales that [he] was requested to include would in fact violate the Code of Ethics, [and] would not be in the best interest of those timber stands” or the Franklin County School District, the MFC, or the State. He goes on to explain that he complied with the instructions of his superiors, “except to the extent that those instructions required [him] to violate ... the Code of Ethics and [his] own common sense and knowledge of the properties and timber in question.” (Emphasis added).
¶ 20. However, this attitude is unmistakably insubordinate because Oglesby indicated that he knew better than his superiors, and was in direct opposition to their instructions. Oglesby’s view of professional ethics appears to be that whatever he thinks is the right direction for the timber harvesting must be implemented, or he is acting unethically. Thus, he could not attach his name “to an inappropriate proposal that was not based on sound forestry management practices as I understand and appreciate them....” Indeed, the MFC referred to Oglesby’s ethics argument as a “smokescreen” in oral argument before this Court. Even though he had been working as a forester in this area for over twenty-five years, Oglesby’s ultimate job *383 was to prepare the plan in accordance with the instructions of his superiors, whether he agreed with those instructions or not.
¶ 21. There is also evidence that Ogles-by delayed in his refusal to follow instructions. After the June 2008 meeting, it was not until October 2008 that Oglesby turned in only a slightly more aggressive plan, which did not comply with the MFC’s instructions. On October 16, 2008, Oglesby was told to redo the plan to comply with the instructions, but he refused. On October 31 he was charged with insubordination. State Forester Morgan even met with Oglesby to explain why the change to a thirty-five year rotation needed to be made. Very few employers would go to such lengths to get an employee “on board” with a project; however, Oglesby continued to express his disagreement with the plan and refused to sign the plan.
¶ 22. Since review of an order from an administrative agency’s proceedings is limited to the record and findings of the agency, it follows that the reviewing court “may neither substitute its own judgment for that of [the] administrative agency which rendered the decision nor reweigh the facts of the case.” Anson, 879 So.2d at 964 (¶ 18) (citing Miss. Employment Sec. Comm’n v. Pulphus, 538 So.2d 770, 772 (Miss.1989); Shurden, 822 So.2d at 263 (¶ 13)). The circuit court reinterpreted the entire situation as a disagreement of professional opinions between Oglesby and the MFC rather than insubordination. The circuit court noted that timber management is an “inexact science” where there is “room for legitimate and sincere disagreement among qualified foresters” regarding the best timber management plan. While this may be so, we find the circuit court erred in substituting its opinion of the evidence for that of the EAB, which showed Oglesby continued to voice his disagreement and failed to prepare a plan in accord with the instructions of his supervisors. This evidence could certainly be considered insubordination by the fact-finder.
¶ 23. We cannot find the EAB erred in upholding Oglesby’s termination for insubordination. In Anson, the Mississippi Supreme Court stated that the EAB is empowered to accept the testimony of one witness over another. Anson, 879 So.2d at 964 (¶ 17). Additionally, even in the face of conflicting testimony, we are bound by our limited standard of review. This Court does not act as an initial fact-finder; the agency’s findings are presumed to be correct. Miss. Dept. of Corr. v. Harris, 831 So.2d 1190, 1192-93 (¶¶ 6, 10) (Miss.Ct.App.2002). Oglesby failed to meet his burden of proving otherwise. See id. at (¶ 10) (quoting Richmond v. Miss. Dep’t of Human Servs., 745 So.2d 254, 258 (¶ 14) (Miss.1999)). There is substantial evidence in the record to support the EAB’s finding of three instances of insubordination.
II. OGLESBY’S ISSUES
¶ 24. Oglesby raises two more reasons the circuit court could have reversed the EAB’s decision: the EAB failed to apply the correct burden of proof, and the MFC failed to follow the State Employee Handbook. We are not persuaded by either argument.
A. Burden of Proof
¶ 25. Oglesby claims the EAB applied the incorrect burden of proof-that Oglesby must prove the agency’s decision was “arbitrary, capricious, or against the overwhelming weight of the evidence.” Ogles-by contends that even though the circuit court did not address this issue, the decision of the EAB is erroneous as a matter of law because the standard the EAB used violates Mississippi Code Annotated sec *384 tion 25-9-127(1) (Rev. 2010). This statute provides that on appeal, an employee who receives a notice of dismissal is “required to furnish evidence that the reasons stated in the notice of dismissal ... are not true or are not sufficient grounds for the action taken.” Additionally, Oglesby states that EAB Administrative Rule 21(C) sets forth the proper burden of proof, which is the same standard as that found in section 25-9-127(1). Oglesby claims that he met his burden of proof because the evidence demonstrated that the reasons listed in the notice of dismissal letter of October 2008 were not true.
¶ 26. The EAB hearing officer’s order of August 2008 states that the EAB rule is that “the appealing party shall have the burden of proving that the action taken against the employee is arbitrary, capricious, against the overwhelming weight of the evidence and merits the relief requested.” The EAB hearing officer found that the MFC’s actions in terminating Oglesby were not “arbitrary, capricious, or against the overwhelming weight of the evidence,” and Oglesby failed to meet his burden of proof. In its order of January 2010, the full EAB found that there was sufficient evidence to support the action of the MFC.
¶ 27. In response to Oglesby’s argument, the MFC points out that Oglesby failed to note while an employee must prove the reasons for the dismissal are not true, the employee must also prove that the action taken against the employee is arbitrary, capricious, against the overwhelming weight of the evidence, and merits the relief requested under EAB Administrative Rule 21(B).[5] In support, the MFC cites Pannell, where the supreme court found the circuit court properly reviewed the proceedings under both EAB Rule 21(B) and (C).[6] Pannell, 909 So.2d at 1122-23 (¶ 22). We find no error with the burden of proof used in the EAB hearing officer’s August 2008 order. Oglesby’s issue is without merit.
B. State Employee Handbook
¶ 28. Oglesby also argues that the circuit court should have found the MFC violated the Mississippi State Employee Handbook (Handbook).
¶ 29. First, Oglesby complains that if any disciplinary action was to be taken against him, it should have been applied in steps, in accordance with the rules in the Handbook for Group Two offenses, and not simultaneously. Additionally, Oglesby claims his termination after a twenty-five year career as a forester, without prior reprimands, was “inappropriate and unprofessional.”
¶ 30. Oglesby does not cite any authority for his first argument. In response, the MFC cites Young v. Mississippi State Tax Commission, 635 So.2d 869, 871 (Miss.1994), where an employee was charged at one time with four incidents of Group Two offenses for insubordination. On appeal, the employee argued the agency, in terminating him, failed to follow the published *385 guidelines and rules. Id. at 872. The Young court did not find the application of the charges in error, and cited the State Personnel Board Policy Manual requiring “the application of disciplinary action in steps of increasing severity ‘whenever practical.’ ”[7] Id. at 872-73. No authority has been cited to us that disciplinary action must be taken in steps. Therefore, we find no merit to Ogleby’s argument.
¶ 31. Second, Oglesby claims that his reprimands violated the Handbook and therefore were “unethical.” In the October 31, 2008 notice of reprimands letter to Oglesby, the MFC stated that “[i]f any of the charges are found to be proper, a decision will be made that could result in possible further discipline, up to and including, suspension, demotion or the termination of your employment....” (Emphasis added.) Oglesby cites the rules in the Handbook providing: “Group Two offenses may be disciplined by written reprimand and/or suspension without pay not to exceed five working days. Accumulation of two Group Two written reprimands within a one-year period may result in demotion or dismissal.” He appears to make the argument that the word “any” in the letter is improper and violates the Handbook rules because one Group Two offense would not warrant his termination.
¶ 32. We find no merit to this argument. The MFC’s October 2008 letter merely puts Oglesby on notice of the possibly consequences and disciplinary actions that may be taken for the offenses.
CONCLUSION
¶ 33. Because there was substantial evidence in the record to support the EAB’s decision, the circuit court erred in reversing the decision of the EAB. We therefore reverse the circuit court’s decision and reinstate the EAB’s decision to terminate Oglesby.
¶ 34. THE JUDGMENT OF THE FRANKLIN COUNTY CIRCUIT COURT IS REVERSED AND RENDERED, AND THE JUDGMENT OF THE MISSISSIPPI EMPLOYEE APPEALS BOARD IS REINSTATED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. Sixteenth section trust lands are overseen by the Mississippi Secretary of State’s Office, with timber management under the direction of the MFC, not the service forester. See Miss.Code Ann. § 29 — 3—45(1)(a)—(b) (Rev. 2010).

. See http://www.spbrez.ms.gov/SPB% 20Doc-uments/SPB/SPB% 20pubs.asp (follow "MSBP Employee Handbook 3/1/10 version” hyperlink).

. Oglesby argues that the three alleged offenses actually refer to a single event-Ogles-by’s “reluctance” to sign the MFC’s new plan.

. In his November 2008 letter, Oglesby did cite the following propositions from the Code of Ethics for the Registered Forester, but we fail to see how signing the plan would violate any of them:
1. I will strive to be accurate in my knowledge of forestry and will disseminate and speak out against the spreading of false or misleading statements concerning forestry.
2. I will advise only in a worthy and truthful manner refraining from misleading or exaggerated statements concerning what I am preparing to perform.
3. When participating in a public or private fact-finding session, I will base my testimony on adequate knowledge of the subject, and will not withhold data in order to substantiate my point of view.
4.I will perform services of only the highest standards and with complete loyalty to my employer or client and will not voluntarily disclose information about the business affairs of my employer or client which the employer desires to keep confidential.
11. I will obligate myself, without reservation, to utilize all of my forestry knowledge and experience for the use, benefit, and betterment of my fellow man and his environment.
The entire ethical code includes eleven points, but none support Oglesby’s ethical violation argument. See http://www.cfr.msstate.edu/ borf/codeofethics.asp.

. EAB Rule 21(B) states: "The appealing party shall have the burden of proving that the action taken against the employee is arbitrary or capricious, not supported by any substantial evidence or in violation of some statutory or constitutional right and merits the relief requested." http://www.spbrez.ms.gov/SPB% 2 ODocuments/SPB/EAB% 20webpage-ñews.pdf (follow "EAB Administrative Rules” hyperlink).

. EAB Rule 21(C) states: "An appealing party who is a permanent State Service employee and who has by written notice been dismissed or otherwise adversely affected as to his or her compensation or employment status shall be required to furnish evidence that the reasons stated in the notice of such action are not true or are not sufficient grounds for the action taken.” Id.

. See http://www.spbrez.ms.gov/SPB% 20Doc-uments/SPB/SPB% 20pubs.asp (follow "MSBP Policy and Procedures Manual 10/1/10 version” hyperlink).