ROBERTS, J.,
for the Court:
¶ 1. The Mississippi State Board of Dental Examiners found that Dr. Edwin Holt violated several conditions of a consent agreement related to his practice of dentistry in Mississippi. Following his unsuccessful appeal to the Adams County Chancery Court, Dr. Holt appeals to this Court. Dr. Holt claims that the Board’s decision was not supported by substantial evidence. He also raises numerous issues that center on the concept that the Board violated his due-process rights. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. In 2010, the Board initiated disciplinary proceedings against Dr. Holt based on three allegations that he violated the Mississippi Dental Practice Act by advertising and practicing outside of the scope of dentistry. To avoid a disciplinary hearing, Dr. Holt entered a consent agreement on February 25, 2011. Dr. Holt agreed that his license would be suspended for five years, but his suspension would be stayed for all of that period except six weeks. Dr. Holt was to serve his six-week suspension during two separate three-week periods. The consent agreement provided that Dr. Holt was forbidden from practicing dentistry “directly or indirectly” during his three-week suspension periods. Among other conditions, Dr. Holt was also *1275 obligated to successfully complete an ethics course, submit to unannounced inspections, and dismiss a federal lawsuit against the members of the Board.
¶ 3. Dr. Holt’s first three-week suspension period was from April 7, 2011, through April 27, 2011. During that time, Dr. Holt went to his clinic in Natchez, Mississippi, and performed dental services on one of his employees. He also returned to the Natchez clinic to review treatment plans, critique another dentist’s work, and participate in the “morning huddles.” During the “morning huddles,” Dr. Holt instructed the staff regarding the manner in which patients would be treated. The Board conducted an informal, nonadjudica-tory hearing on May 13, 2011. The purpose of that hearing appears to have been to determine whether Dr. Holt was making adequate progress regarding his compliance with the terms of the consent agreement. During the informal hearing, Dr. Holt stated that he had not visited his clinic during the initial three-week suspension period for any purpose other than to feed his horses.
¶4. As mentioned above, the consent agreement provided that Dr. Holt’s dental practice “shall be subject to unannounced, periodic inspections” during the stayed five-year suspension period. On Thursday, August 4, 2011, two investigators employed by the Board traveled to Dr. Holt’s clinic to conduct a periodic inspection. According to the investigators, Dr. Holt and his staff interfered with the investigation. The investigators claimed that Dr. Holt instructed his staff to stand over them as they copied his files. The investigators also stated that they cut their investigation short because Dr. Holt acted hostilely toward them. Specifically, the investigators said that Dr. Holt kicked a bucket behind his clinic, and broke a lamp out of frustration at their presence. As a result, the investigators had to complete their investigation the following week after obtaining a search warrant from the Adams County Circuit Court.
¶ 5. On August 19, 2011, Karen Wilson, a licensing investigator supervisor for the Board, alleged that Dr. Holt had breached numerous conditions of the consent agreement.[1] On February 3, 2012, the Board conducted a hearing on Wilson’s complaint. That same day, the Board held that Dr. Holt had committed eleven breaches of the consent agreement. Consequently, the Board rescinded the previous stay. In effect, the Board suspended Dr. Holt’s license until February 25, 2016.
¶ 6. Dr. Holt appealed to the chancery court. He claimed that the Board erred when it suspended his license for five years. Specifically, Dr. Holt argued that the Board should not have found that: (1) he directly practiced dentistry while his license was suspended; (2) he indirectly practiced dentistry while his license was suspended; (3) he answered untruthfully during a hearing before the Board; (4) he interrupted the Board’s inspection; (5) he failed to dismiss his lawsuit with prejudice as required by the consent order; (6) he failed to complete the ethics program as required by the consent order; and (7) he had over-sedated some of his patients. Dr. Holt also claimed that the Board violated his due-process rights during practically every stage of the proceedings before the Board. The chancellor held that there was not substantial evidence to support the Board’s finding that Dr. Holt had interrupted a periodic inspection. The chancellor also found that the Board had violated Dr. Holt’s right to due process *1276 when it failed to provide discovery related to its claim that he had over-sedated some of his patients. Otherwise, the chancellor affirmed the remainder of the Board’s decisions. Dr. Holt appeals.
STANDARD OF REVIEW
¶ 7. “Judicial review of an administrative decision is limited.” McFadden v. Miss. State Bd. of Med. Licensure, 735 So.2d 145, 151 (¶ 20) (Miss.1999). This Court will not disturb an administrative agency’s decision unless the decision is unsupported by substantial evidence, arbitrary or capricious, beyond the scope or power granted to the agency, or in violation of one’s constitutional rights. Dawson v. Miss. State Bd. of Massage Therapy, 949 So.2d 829, 831 (¶ 5) (Miss.Ct.App.2006). “A rebuttable presumption exists in favor of [an] administrative agency[’s] decisions.” Id. “Reviewing courts are bound by the record, and are prohibited from reweighing the facts of the case.” Id. However, “[w]hether a party received due process is a question of law, which [an appellate court reviews] de novo.” Akins v. Miss. Dep’t of Rev., 70 So.3d 204, 208 (¶ 9) (Miss.2011).
ANALYSIS
I. DUE PROCESS
¶ 8. Dr. Holt argues that he “was denied any semblance” of due process during the entire proceeding before the Board. According to Dr. Holt, “[f]rom the very beginning of [his] pilgrimage ... his rights have been violated by the Board, its investigators[,] and its [p]rosecutorial [c]ounsel.” Both the United States and Mississippi Constitutions guarantee Dr. Holt due process of law before an administrative agency. U.S. Const, amend. XIV; Miss. Const, art. 3, § 4. “Due process always stands as a constitutionally grounded procedural safety net in administrative proceedings.” Dawson, 949 So.2d at 831 (¶7).
¶ 9. Dr. Holt actually raises several issues under this single heading. Many of Dr. Holt’s claims under this heading are entirely unrelated to his right to due process. Before we turn to Dr. Holt’s myriad of issues, it is necessary to address the fact that in his appellate brief, Dr. Holt attempts to inject matters that do not appear in the record. “Appellate review of an agency decision is limited to the record and the agency’s findings.” Bd. of Law Enforcement Officers Standards & Training v. Butler, 672 So.2d 1196, 1199 (Miss.1996). Consequently, we will not discuss matters that do not appear in the record. We turn to Dr. Holt’s issues on appeal.

A. The Right to Counsel

¶ 10. After Dr. Holt had agreed to the terms of the consent agreement, the Board requested that he attend an informal, no-nadjudicatory hearing to discuss the status of his compliance with the terms of the consent agreement. On the originally scheduled date of the informal hearing, Dr. Holt’s attorney was involved in a traffic accident. Because Dr. Holt’s attorney could not attend the informal hearing, the Board postponed it until May 13, 2011.
¶ 11. On the rescheduled date of the informal hearing, Dr. Holt appeared without an attorney. Dr. Holt asked whether he needed an attorney, and he was told “no.” During the informal hearing, the prosecutor asked whether Dr. Holt had gone to his clinic during his initial three-week suspension. Dr. Holt said that he had, but only to feed horses that he kept on the clinic’s property.
¶ 12. Later, Wilson accused Dr. Holt of lying to the Board. In his answer to the Board’s complaint, Dr. Holt admitted that he had “performed certain dental services” *1277 during his initial three-week suspension. During the subsequent adjudicatory hearing, three witnesses testified that Dr. Holt was not truthful when he told the Board that he had only been at his clinic to feed his horses. As a result, the Board found that Dr. Holt breached the consent agreement by giving a false statement during the informal hearing. According to Dr. Holt, because the Board did not tell him that he needed to have an attorney present during the informal hearing, “he was deprived of his attorney on that day by the Board.”
¶ 13. Dr. Holt cites no authority that expressly provides that the Board was obligated to ensure that he had an attorney present at an informal, nonadjudicatory hearing. Mississippi Code Annotated section 73-9-65 (Rev.2012) only addresses a dentist’s right to have an attorney present during disciplinary hearings. Specifically, section 73-9-65 provides that “[t]he accused may be present at the hearing in person, by counsel, or both.” (Emphasis added). At the time of the informal, no-nadjudicatory hearing, Dr. Holt was not “accused” of improper conduct. The Board merely sought to determine the status of his compliance with the terms of the consent agreement. The Board had not expressly accused Dr. Holt of violating any particular condition of the consent agreement at that time.
¶ 14. The Board postponed the original date of the informal hearing to accommodate Dr. Holt’s attorney. Even so, Dr. Holt appeared at the informal hearing without an attorney. The Board was not obligated to ensure that Dr. Holt had an attorney during the informal, nonadju-dicatory hearing. We find no merit to this claim.

B. Excessive Fine

¶ 15. Next, Dr. Holt claims that the Board’s decision to suspend his license is the equivalent of an excessive fine. To support his argument, Dr. Holt contends that he will lose “in the neighborhood of 1.2 million dollars in gross revenue per year” while his license is suspended. Dr. Holt reasons that, therefore, the Board should not have suspended his license for five years.
¶ 16. The Mississippi Constitution provides that “[cjruel or unusual punishment shall not be inflicted, nor excessive fines be imposed.” Miss. Const. art. 3, § 28. However, under certain circumstances, the Board clearly has the authority to revoke or suspend a dentist’s license. Miss.Code Ann. § 73-9-61(1) (Rev.2012). A license to practice medicine has been described as a “valuable property right.” Montalvo v. Miss. State Bd. of Med. Licensure, 671 So.2d 53, 57 (Miss.1996) (citing Miller v. State Bd. of Pharmacy, 262 So.2d 188, 189 (Miss.1972)). However, in Mississippi State Board of Nursing v. Wilson, 624 So.2d 485, 494 (Miss.1993), a nursing license was categorized as a “revocable privilege,” which, “much like a license to practice medicine and dentistry, represents a property interest, not a fundamental right.” (Emphasis added).
¶ 17. As the Board notes, Dr. Holt’s argument is essentially that if a professional earns a substantial enough income, the suspension of his license is an excessive fine. Stated differently, Dr. Holt claims that a dentist’s license should be untouchable if that dentist has a lucrative practice. We are not persuaded by Dr. Holt’s reasoning. It was not an excessive fine to suspend Dr. Holt’s license for five years. There is no merit to this claim.

C. Alleged Prosecutorial Misconduct

¶ 18. Dr. Holt raises several claims centered on the concept that prose-cutorial counsel behaved improperly dur *1278 ing the adjudicatory hearing. Specifically, Dr. Holt claims that the prosecutorial counsel engaged in reversible misconduct when he: (1) called him a liar during the adjudicatory hearing; (2) asked leading questions during the adjudicatory hearing; (3) expressed his opinion that Dr. Holt was not credible; and (4) asked three witnesses to comment on Dr. Holt’s previous statement that he only visited his clinic to feed his horses during his initial three-week suspension. Before we delve into Dr. Holt’s claims, we note that “the formalities of practice, procedure, and evidence are relaxed in all administrative proceedings, including those concerning licenses.” Miss. Bd. of Veterinary Med. v. Geotes, 770 So.2d 940, 943 (¶ 14) (Miss.2000).
¶ 19. Dr. Holt takes issue with the prosecutorial counsel’s statement that Dr. Holt lied during the informal, nonadju-dicatory hearing. Dr. Holt argues that the prosecutorial counsel is prohibited from commenting on an accused’s credibility. However, there was nothing inherently improper about the prosecutorial counsel’s statement because Dr. Holt had been accused of giving a false answer during the previous hearing. And the prosecutorial counsel’s comment was directed at Dr. Holt’s specific statement, rather than his credibility as a whole.
¶ 20. Next, Dr. Holt argues that the prosecutorial counsel should not have been allowed to ask leading questions during the adjudicatory hearing. Dr. Holt also claims that the prosecutorial counsel impermissibly asked witnesses to comment on Dr. Holt’s previous statement during the informal, nonadjudicatory hearing. That is, Dr. Holt argues that the prosecu-torial counsel should not have been allowed to ask three witnesses whether it was true that Dr. Holt only visited his clinic to feed his horses during his initial three-week suspension. However, Dr. Holt did not object to those questions during the adjudicatory hearing. Failure to raise a contemporaneous objection to evidence constitutes a waiver of the issue on appeal. Patton v. State, 742 So.2d 150, 153 (¶ 9) (Miss.Ct.App.1999). Therefore, this issue is proeedurally barred.

D. Impermissible Conflicts of Interest

¶ 21. According to Dr. Holt, the prosecutor should have recused himself from Dr. Holt’s adjudicatory hearing. Dr. Holt’s claim is based on the fact that he had unsuccessfully filed a bar complaint against the prosecutor.[2] That bar complaint was later dismissed because it had no merit.
¶ 22. In the context of criminal trials, “the mere filing of a lawsuit, wherein a prisoner is allowed to proceed in forma pauperis, is insufficient to require recusal of a trial judge named as a defendant in that lawsuit where there is no evidence in the record which demonstrates that the trial judge is biased or unqualified.” Evans v. State, 725 So.2d 613, 678-79 (¶ 282) (Miss.1997). Additionally, “a judge is not disqualified merely because a litigant sues or threatens suit.” In re Hipp Inc., 5 F.3d 109, 116 (5th Cir.1993). By extension, the mere filing of a bar complaint against the Board’s prosecutor is insufficient to force him to recuse.
¶ 23. Reversible error does not stem from the fact that the prosecutorial counsel vigorously presented his case. That is to be expected. And the outcome of Dr. *1279 Holt’s disciplinary hearing had no bearing on the outcome of a bar complaint that had been found lacking in merit years earlier. Dr. Holt does not point to any specific instances where the prosecutorial counsel’s bias was evident. Dr. Holt was obligated to point to specific factual issues supporting his claim for relief accompanied by citations to the record showing where the evidence relating to the issues may be found. Moody v. State, 838 So.2d 324, 338 (¶ 57) (Miss.Ct.App.2002). “Without such support for his arguments, an appellate court cannot adequately consider an issue raised on appeal and make an informed decision as to whether it has ... merit.” Id.
¶ 24. Next, Dr. Holt claims that the Board’s investigator, Wilson, should have been prohibited from participating in the disciplinary hearing. “Administrative proceedings should be conducted in a fair and impartial manner, free from any suspicion of prejudice or unfairness.” Freeman v. Pub. Emps' Ret. Sys. of Miss., 822 So.2d 274, 281 (¶ 21) (Miss.2002). “Due process guarantees neutrality on the part of those sitting in a judicial or semi-judicial capacity.” Id. “[The supreme court] has rejected the proposition that administrative agencies cannot perform both investigative and adjudicative functions.” Id. at (¶ 22). “While administrative agencies may perform both investigative and adjudicative functions, those functions cannot be performed by the same person.” Id. at (¶ 23). “[T]here is a presumption that the officers conducting the hearing and the members of the Board behave honestly and fairly in the conduct of the hearings and in the decision-making process.” McFadden, 735 So.2d at 158 (¶ 53). “Absent some showing of personal or financial interest on the part of the hearing officer or evidence of misconduct on the officer’s part, this presumption is not overcome.” Id.
¶25. Wilson did not act in an adjudicatory capacity at Dr. Holt’s disciplinary hearing. She merely investigated the claims against Dr. Holt, assisted in preparing the complaint against him, and testified at the disciplinary hearing. Because Wilson did not act in both an investigatory and adjudicatory capacity, there is no merit to Dr. Holt’s claim.

E. Insufficient Notice

¶ 26. Finally, Dr. Holt claims that he received insufficient notice of the Board’s claims in counts thirteen, fourteen, and fifteen that he sedated some of his patients beyond anxiolysis.[3] The complaint against Dr. Holt did not allege that he took any specific patients beyond anx-iolysis on any particular date. On November 28, 2011, Dr. Holt requested that the Board disclose all information and material that was discoverable under the Board’s rules of procedure.
¶27. “Courts have never required that there be a particular form of notice or that particular procedures be adopted in order to satisfy constitutional due process requirements.” Geotes, 770 So.2d at 943 (¶ 13). “[D]ue process is not a fixed content unrelated to time, place and circumstances.” Id. “[D]ue process is flexible and calls for such procedural protections as the particular situation demands.” Id. “The fundamental requirement of due process is simply the opportunity to be heard at a meaningful time *1280 and in a meaningful manner.” Id. “[T]he formalities of practice, procedure, and evidence are relaxed in all administrative proceedings, including those concerning licenses.” Id. at (¶ 14). “Further, due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections.” Id. In Miller, 262 So.2d at 189, the supreme court held:
The revocation of a professional license is a matter of the most serious consequences. Proceedings directed toward that end have not been regarded in Mississippi as criminal in character. Nevertheless, the professional man accused of derelictions of such gravity as to justify revocation of his license to practice his profession, is entitled, as a matter of right, to be informed of the nature of the charge against him, if not with the exact specificity required in a criminal indictment, the charge must be made with not less exactitude and fullness than would be necessary in a bill of complaint or declaration in a civil case. Moreover, he is entitled to demand and obtain a bill of particulars or require that the charge be made more definite and certain under circumstances prescribed in the statutes, practice and procedure of this State.
¶ 28. The chancellor held that “[i]t is not fair to withhold both the identities and dates of alleged violations from an accused until it is too late for him to have a reasonable opportunity to rebut the allegations.” We agree. Accordingly, we reverse the Board’s decision to suspend Dr. Holt’s dental license based on the allegation that Dr. Holt sedated patients beyond anxioly-sis. However, our decision does not affect the Board’s decision to suspend Dr. Holt’s license for any other reason.
II. SUBSTANTIAL EVIDENCE
¶ 29. Dr. Holt claims that there was not substantial evidence to support the Board’s decision. Similarly, Dr. Holt argues that the Board’s decision was arbitrary and capricious. “Because the li-censure statutes and regulations at issue in this case are penal in nature, the Board [was] required to prove its case ... by clear' and convincing evidence, and the statutes and regulations at issue must be strictly construed in favor of Dr. [Holt].” McFadden, 735 So.2d at 152 (¶ 24). “Substantial evidence is ‘something less than a preponderance of the evidence but more than a scintilla or glimmer. The reviewing court is concerned only with the reasonableness of the administrative order, not its correctness.’ ” Sierra Club v. Miss. Envtl. Quality Permit Bd., 943 So.2d 673, 678 (¶ 11) (Miss.2006) (quoting Miss. Dep’t of Envtl. Quality v. Weems, 653 So.2d 266, 280-81 (Miss.1995)). Furthermore, the Board’s decision was “arbitrary or capricious if the agency entirely failed to consider an important aspect of the problem, or offered an explanation for its decision that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.” Id. As previously mentioned, “[a] rebutta-ble presumption exists in favor of agency decisions, and [an appellate court] may not substitute its own judgment for that of the agency.” Id.
¶ 30. The Board held that Dr. Holt’s license should be suspended because he directly practiced dentistry during his initial three-week suspension period. In his first amended answer to the Board’s complaint, Dr. Holt admitted that “on April 15, 2011, he performed certain dental services on Dee Hammett.” During the adjudicatory hearing, Dr. Holt testified that he “numbed [Hammett] up ... and *1281 [he] removed her crown.” Dr. Holt also testified that “looking back at it, it can be considered dentistry, and I shouldn’t have done it[.]”
¶31. Mississippi Code Annotated section 73-9-3 (Rev.2012) defines “dentistry” as the “evaluation, diagnosis, prevention^] and/or treatment (nonsurgical, surgicalf,] or related procedures) of diseases, disorders[,] and/or conditions of the oral cavity, maxillofacial area[,] and/or the adjacent and associated structures and their impact on the human body....” We agree with the chancellor that “the numbing of a patient [and] removal and insertion of a crown is certainly within” the definition of dentistry. Consequently, we find that the Board acted well within its discretion when it held that there was clear and convincing evidence that Dr. Holt violated the terms of the consent agreement by directly practicing dentistry during his initial three-week suspension period.
¶ 32. Although this conclusion is in and of itself sufficient to affirm the Board’s decision, we note that there was substantial evidence to find that Dr. Holt violated other terms of the consent agreement. There was substantial evidence that Dr. Holt indirectly practiced dentistry during his initial three-week suspension period. Another dentist testified that Dr. Holt visited his clinic during his suspension period and participated in “morning huddles.” During those meetings, Dr. Holt discussed treatment plans for specific patients, discussed patient records, and critiqued the work of a visiting dentist. There was also substantial evidence that Dr. Holt gave an untruthful statement that he had only visited his clinic to feed his horses during his three-week suspension. Further, there was substantial evidence that Dr. Holt failed to satisfy his obligation to successfully complete the “ProBe” ethics course. Dr. Holt took the ProBe ethics course, but he failed it. The assessment report that followed the ProBe ethics course stated that Dr. Holt arrived late and declined to participate in the discussions. The program director reported that Dr. Holt was inattentive, and he twice had to be reminded to put away his cell phone. Additionally, Dr. Holt left the seminar early. According to the program director, Dr. Holt’s “poor participation and lack of preparation and engagement [led] us to the assessment that he did not demonstrate the behavior and necessary understanding to warrant even a conditional pass of the course.”
¶ 33. “Issues of fact and credibility are the primary responsibility of the trier of fact.” McFadden, 735 So.2d at 152 (¶ 26). “Accordingly, [an appellate court] should not reweigh the facts nor substitute its judgment for that of the fact finder as to credibility issues.” Id. We find there was substantial evidence to support the Board’s decision that Dr. Holt violated a number of the conditions set forth in the consent agreement. Furthermore, the Board’s decision was not arbitrary and capricious. It follows that we find no merit to this issue.
III. THE BOARD’S AUTHORITY
¶ 34. Finally, Dr. Holt claims that the Board, the prosecutor, and the Board’s investigators “all acted beyond their authorized powers.” Much of Dr. Holt’s argument is based on matters that do not appear in the record. Additionally, Dr. Holt failed to support his argument with authority. Mississippi Rule of Appellate Procedure 28(a)(6) requires an appellant’s brief to “contain the contentions of [the] appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on.” Likewise, Mississippi case law has consistently held that the “[f]ailure to cite any *1282 authority is a procedural bar, and [a reviewing court] is under no obligation to consider the assignment.” Taylor v. Kennedy, 914 So.2d 1260, 1262 (¶ 4) (Miss.Ct.App.2005) (citation omitted). Procedural bar notwithstanding, the Board clearly has the authority “[t]o regulate the practice of dentistry ... and to promulgate reasonable regulations as are necessary or convenient for the protection of the public.” Miss.Code Ann. § 73-9-13(b) (Rev.2012). Additionally, the Board has the authority “[t]o prosecute, investigate!],] or initiate prosecution for violations of the laws of the state pertaining to practice of dentistry ... or matters affecting the rights and duties, or related thereto.” Miss.Code Ann. § 73-9-13(m) (Rev.2012). We find no merit to Dr. Holt’s claim that the Board, the prosecutor, or the Board’s investigators acted beyond the scope of their authority. Therefore, this issue is merit-less.
¶ 35. THE JUDGMENT OF THE ADAMS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. Wilson originally raised fifteen allegations against Dr. Holt, but the Board only pursued eleven of those allegations during the subsequent disciplinary hearing.

. Dr. Holt attempts to raise matters that appear outside of the record. As previously mentioned, an appellate court can only consider matters that appear in the record. McFadden, 735 So.2d at 160 (¶ 61). Therefore, we do not discuss those matters that appear outside of the record.

. In its brief, the Board defined “anxiolysis” as "the pharmacological reduction of anxiety through the administration of a minor tranquilizer which allows for the uninterrupted interactive ability in a totally awake patient with no compromise in the ability to maintain patient airway continuously and without assistance.”