# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-SA-01098-COA

LURETHA O. BIVINS                                                      APPELLANT

v.

ELLISVILLE STATE SCHOOL AND                                           APPELLEES
MISSISSIPPI DEPARTMENT OF MENTAL
HEALTH

| | |
|---|---|
| DATE OF JUDGMENT: | 02/13/2024 |
| TRIAL JUDGE: | HON. DAL WILLIAMSON |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | MICHAEL ADELMAN |
| ATTORNEY FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL BY: LINDSAY THOMAS DOWDLE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 11/25/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McDONALD AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.     A state employee was terminated after recording a co-worker with her phone, which was a violation of department policy. On appeal, the employee argues her termination was error because the record did not contain substantial evidence and she was denied due process. Finding substantial evidence supported the termination, we affirm.

¶2.     Luretha Bivins was an employee of Ellisville State School, a facility operated by the Mississippi Department of Mental Health. Part of her job entailed training new employees. In the fall of 2022, she was tasked with training new hire DeVone Hughes. On the second day of training, Hughes became frustrated with Bivins and picked up a wooden spoon,

waving it around in the kitchen.

¶3.    In Hughes' witness statement, she recounted, "I asked [Bivins] to pass me a spoon," but "she completely told me NO because she was sitting down." Hughes then said that she snapped and that Bivins "video[ed] me, but she really provoked me."

¶4.    In Bivins' witness statement, she recalled that Hughes started to call her names while waving the spoon; "[s]he used other cuss words and I told her no this is unacceptable and that [a resident] was looking at her," and "she asked me if I was recording her and she threw the spoon down."

¶5.    The incident happened on a Friday. The following Monday morning, Bivins' supervisors reached out to her to discuss the witness statement she submitted. After their meeting, one of the supervisors filled out a report recounting that "[Bivins] said 'I got a video and I'm going to use it; I'm going to put it on YouTube.'"

¶6.    A week later, Bivins wrote a 3-page letter addressed to the Mississippi State Personnel Board. She faxed a copy of the document to her supervisor. In this letter, Bivins asserted several grievances, specifically writing,

> On day two of the training Ms. Hughes abandoned the kitchen duties . . . . I was able to get some of this on video.
> . . . .
> A few minutes later Ms. Hughes picked up a long handle spoon and started moving it back and forth, she dropped the spoon and raised the middle fingers on both hands. When she could not get me to respond to her, she said she was quitting.
> . . . .
> I have been on the record regarding some matters on the campus . . . .
> . . . .

2

I was forced to leave [my] building get in my car and travel to another building to use the restroom. I was placed in a room with lots of peeling paint and when I took videos and pictures, I vowed to go the media—the matter was corrected.

¶7. Two weeks later, Bivins received a "Notice of Due Process Hearing" letter from the Director at ESS. The letter informed Bivins that a "hearing is scheduled for September 14, 2022" to determine "whether inefficiency or other good cause exists which warrants possible disciplinary action." The letter notified Bivins that the hearing was an opportunity for her to respond to the following specific allegation:

On August 22, 2022, you faxed to Stephen Smith, ESS HR Director, admitting that you made a video of your co-worker while on a Department of Mental Health worksite. This is considered to be a violation of the Telephone and Social Media Policy as outlined on Page 22 of the Addendum of the Department of Mental Health which states that 'use of mobile phones, cameras or other electronic devices to record or photograph individuals, employees and workplace premises is a violation of DMH security.'

The letter concluded by stating, "[o]nce a determination is made concerning this matter, you will be notified of a final decision."

¶8. The hearing occurred as scheduled and lasted approximately ten minutes. The following day, on September 15, 2022, the ESS Director sent a letter to Bivins with the subject line "RE: Disciplinary Action Decision." This letter informed her, "Your actions constitute inefficiency or other good cause, and pursuant to Chapter 7 of the Mississippi State Employee Handbook your employment is terminated effective September 15, 2022."

¶9. ESS cited three points in the letter it claimed constituted good cause. First, the failure to comply with agency policies for reporting neglect. Second, the refusal to cooperate during

3

an administrative investigation. Third, the violation of the telephone and social media policy by filming a co-worker.

¶10. Bivins' termination letter further informed her that the School's "disciplinary decision may be appealed to the Mississippi Employee Appeals Board (MEAB)." She filed a notice of appeal to the MEAB shortly after.

¶11. A hearing officer conducted a review of the appeal. This hearing lasted nearly four hours. The sole witness for Bivins' claims was herself. She submitted over a dozen exhibits. ESS presented testimony from two human resources employees, including the HR Director who testified about the existing videotaping policy and its enforcement against other employees in the past.

¶12. The hearing officer examined whether Bivins met her burden to show the reasons stated in the termination letter were untrue or were not sufficient for the termination. The hearing officer found the first two instances were not sufficient grounds to justify terminating Bivins' employment.

¶13. However, the hearing officer concluded that Bivins had indeed violated the School's policy by recording a fellow employee. As a result, the hearing officer affirmed the termination of Bivins on the sole ground of the violation of the policy against videotaping.

¶14. The order on behalf of the MEAB found:

> [T]he agency indicates Bivins was terminated for taking a video of a coworker during working hours. In her testimony, Bivins admits the video was taken at the Ellisville State School during working hours. Bivins indicates the video was taken to show that she was being harassed by a co-worker; however, the

agency presented evidence that taking videos of co-workers is against policy. Specifically, the policy states:

> Use of mobile phones, cameras, or other electronic devices to record or photograph, individuals, employees, and workplace premises is a violation of DMH security, and may result in termination.

> Smith testified that during his tenure with the Mississippi State Department of Mental Health all individuals which videoed other co-workers while on duty were terminated by the agency. As such, Bivins termination for the same offense which was admitted by her is true and sufficient grounds for the agency's decision considering the agency's presumption of correctness in personnel decisions.

The hearing officer concluded, "[C]onsidering Bivins bears the burden of proof that the action of agency was either not true or not sufficient grounds for the action taken the hearing officer finds that the agency's decision regarding termination was sufficient."

¶15. Bivins subsequently appealed the MEAB order for judicial review by the circuit court. In her petition for review, Bivins claimed that she made the video-recording in self-defense against a threat of violence, which justified her action. Bivins argued she did not violate any ESS rules. She asked the circuit court to reverse her termination and reinstate her employment with ESS.

¶16. On appeal, the circuit court conducted a review of the MEAB order. That court ultimately affirmed, finding that the hearing officer's decision was supported by substantial evidence, was not arbitrary and capricious, and was not in violation of a statutory or constitutional right of Bivins. Aggrieved, Bivins appeals.

**DISCUSSION**

5

¶17. "Employees affected by adverse decisions may appeal to the Employee Appeals Board (EAB) for de novo hearing, then to circuit court for judicial review on the record, and finally to [our Supreme] Court." *Richmond v. Miss. Dep't of Hum. Servs.*, 745 So. 2d 254, 257 (¶13) (Miss. 1999) (quoting *Holly v. Miss. Dep't of Corr.*, 722 So. 2d 632, 363 (Miss. 1998)); *see also* Miss. Code Ann. § 25-9-131 (Rev. 2024).

¶18. "[R]eview of an order from an administrative agency's proceedings is limited to the record and findings of the agency, [so] it follows that the reviewing court 'may neither substitute its own judgment for that of [the] administrative agency which rendered the decision nor reweigh the facts of the case.'" *Miss. Forestry Comm'n v. Oglesby*, 105 So. 3d 375, 383 (¶22) (Miss. Ct. App. 2012) (quoting *Miss. Transp. Comm'n v. Anson*, 879 So. 2d 958, 964 (¶18) (Miss. 2004)).

¶19. "In appeals from the EAB, our review is complicated by the involvement of two administrative agencies, the employing agency [ESS] and the EAB." *Bynum v. Miss. Dep't of Educ.*, 906 So. 2d 81, 90-91 (¶17) (Miss. Ct. App. 2004). While there may be two or more decisions in the record, "[o]ur precedent establishes that the decision which we are examining for support of substantial evidence is that of the EAB." *Id*. at 91 (¶17) (citing *Anson*, 879 So. 2d at 964 (¶¶18-19)). In other words, "[r]egardless of the conclusion of the circuit court, our review focuses on the agency decision" from the MEAB. *Id*. at (¶19).

I. **The hearing officer's order affirming termination was not arbitrary and capricious and was supported by substantial evidence.**

6

¶20.  Bivins argues the decision to terminate her must be reversed.

¶21.  "The decision of an employee appeals board will be upheld upon judicial review unless it is: '(a) not supported by substantial evidence; (b) arbitrary or capricious; or (c) in violation of some statutory or constitutional right of the employee.'" *Oglesby*, 105 So. 3d at 379 (¶10) (quoting *Pannell v. Tombigbee River Valley Water Mgmt. Dist.*, 909 So. 2d 1115, 1120 (¶11) (Miss. 2005); Miss. Code Ann. § 25-9-132 (Rev. 2010)). And "[t]he burden of proof is on the appealing employee." *Miss. Dep't of Corr. v. Pennington*, 59 So. 3d 636, 639 (Miss. Ct. App. 2011) (citing Miss. Code Ann. § 25-9-127(1) (Rev. 2010)).

¶22.  Substantial evidence "is such evidence that 'reasonable minds might accept as adequate to support a conclusion.'" *Oglesby*, 105 So. 3d at 380 (¶14) (quoting *Delta CMI v. Speck*, 586 So. 2d 768, 773 (Miss. 1991)). And "[i]f an administrative agency's decision is based on substantial evidence, it is not arbitrary and capricious." *Id*.

¶23.  Crucially, "this Court does not act as an initial fact-finder." *Id*. at 379-80 (¶11). "The EAB is the trier of fact as well as the judge of the witnesses' credibility.'" *Bynum*, 906 So. 2d at 90 (¶14) (quoting *Miss. Bureau of Narcotics v. Stacy*, 817 So. 2d 523, 526 (¶9) (Miss. 2002)). We must "determine whether the agency [MEAB] could properly have evaluated the contested evidence in a manner that supports the agency decision." *Oglesby*, 105 So. 3d at 379-80 (¶11) (quoting *Miss. Dept. of Corr. v. Harris*, 831 So. 2d 1190, 1192 (¶6) (Miss. Ct. App. 2002)).

¶24.  We find ample support in the record for the EAB's decision.  First, there is no

question that ESS had a policy prohibiting one employee from filming another. Bivins provided the hearing officer with a page from the employee handbook that contains the policy: "Use of mobile phones, cameras, or other electronic devices to record or photograph individuals, employees and workplace premises is a violation of DMH security and may result in termination."

¶25.   Second, Bivins herself repeatedly admitted that she had filmed her co-worker while they were in the kitchen working. Indeed, her supervisors later recounted Bivins told them that she had the recording and that she was going to post it on YouTube. In and of itself, this constitutes substantial evidence to affirm the agency's decision.

¶26.   As to whether the termination was arbitrary or capricious, Bivins alleges that the evidence does not show "all individuals which videotaped other co-workers while on duty were terminated." However, the HR director for ESS testified that the agency had repeatedly enforced the policy prohibiting video-recording. His testimony was ESS had fired "[a]t least three or four [employees] that I can remember. At least. Maybe more." Therefore, the evidence shows Bivins was not singled out and was not the only employee who was fired for recording another co-worker with her phone. As a result, her termination was not arbitrary or capricious.

¶27.   For these reasons, we affirm the decision of the MEAB upholding the termination of Bivins for violating the video-recording policy.

**II.    Bivins received due process in her termination proceedings.**

8

¶28. In the alternative, Bivins claims she was deprived of due process because "there [was] no evidence that Ms. Bivins or any other employee . . . was ever provided with a copy" of the video-recording policy before her termination. She essentially argues that ESS did not give her notice that filming a co-worker could result in her termination.

¶29. "[W]hether a party received due process is a question of law, which an appellate court reviews de novo." *Thompson v. Pub. Emps.' Ret. Sys. of Miss.*, 297 So. 3d 267, 271 (¶8) (Miss. Ct. App. 2019) (quoting *Holt v. Miss. State Bd. of Dental Exam'rs*, 131 So. 3d 1271, 1276 (¶7) (Miss. Ct. App. 2014)).

¶30. "Due process requires simply the opportunity to be heard at a meaningful time and in a meaningful manner." *Id*. at 274 (¶19) (quoting *Holt*, 131 So. 3d at 1279-80 (¶27)). The usual "formalities of practice, procedure, and evidence are relaxed in all administrative proceedings, including those concerning licenses." *Id*. Instead, "due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *Id*.

¶31. We find there is no support for Bivins' argument in the record. During the HR director's testimony, he presented an "Acknowledgment of Personnel Policies" that Bivins had signed in September 2021. The acknowledgment stated, "I further understand that I am responsible for reading and adhering to the personnel policies on the various rules, regulations and benefits in the DMH Addendum[.]"

¶32. Also, Bivins testified that the Addendum containing the prohibition was publicly

9

available by going to a state employee website. Furthermore, she was provided ample opportunities to respond to the disciplinary allegations and to appeal her termination, including a lengthy hearing where she submitted multiple exhibits and testified. Consequently, Bivins was not denied due process throughout the course of her termination proceedings.

## CONCLUSION

¶33. Bivins bore the burden of showing the MEAB's order was not supported by substantial evidence or was arbitrary and capricious, but she has failed to do so. The evidence establishes that she used her phone to record her co-worker, that video-recording was against ESS policy, and that a violation of this policy subjected her to termination. Therefore, we affirm the order upholding Bivins' termination.

¶34. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**